LINWOOD A. WINSLOW ET AL. *v.* ZONING BOARD OF THE CITY OF STAMFORD ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 3—decided May 16, 1956

*John C. Macrides,* with whom, on the brief, were *Samuel Gordon* and *Sydney C. Perell,* for the appellants (plaintiff).

*Julius B. Kuriansky,* with whom were *Joseph T. McCue* and, on the brief, *Maurice J. Buckley,* for the appellee (defendant Louis Paul in Stamford Corporation).

*Arthur L. DiSesa,* with whom, on the brief, was *John M. Hanrahan,* for the appellees (named defendant et al.).

O'SULLIVAN, J.   The plaintiffs, four in number, are taxpaying residents of the city of Stamford. The three defendants are the zoning board, hereinafter called the board, Arthur V. Swinnerton, the board's enforcement officer, and the Louis Paul in Stamford Corporation. In 1954, the board amended § 14 of the zoning regulations of the city. The plaintiffs appealed from that action to the Court of Common Pleas.   The court dismissed the appeal, and from that judgment the plaintiffs have appealed to this court.

The facts are undisputed. They may be stated as follows: On November 30, 1951, the city of Stamford, acting under the authority of chapter 43 of the General Statutes, adopted a zoning code.   It is subject to a master plan prepared by the planning board of Stamford for the development of the municipality. 26 Spec. Laws 1228, 1229. It is also subject to charter provisions with respect to zoning.   26 Spec. Laws 1234.   The defendant Louis Paul in Stamford Cor-

poration, hereinafter called the company, has, since a time before the enactment of the zoning code, been operating, at 299 Main Street in Stamford, a restaurant where intoxicating liquors were not sold. The company occupies the premises under a long-term lease. Its personal property in the restaurant is assessed at $17,000. The location is in a general commercial or C-G zone and is within 1500 feet of numerous restaurants and taverns where alcoholic liquors are sold for consumption on the premises.

Section 14 of the regulations is captioned "Dispensing of Alcoholic Liquors." Until December 20, 1954, the pertinent part of § 14 read as follows: "In any district in which is permitted a tavern or a restaurant where liquor is sold for consumption on the premises, no building or premises which prior to December 1, 1951, was not the site or location of a business where alcoholic liquor was sold for consumption on the premises, shall thereafter be used for such purpose if such building or premises is within 1500 feet radius of another tavern or restaurant where liquor is sold for consumption on the premises. . . ." Stamford Zoning Regs., § 14 (c) (1954).

On March 9, 1953, the company applied to the zoning board of appeals for a variance to permit the sale and consumption of intoxicating liquors on the premises. The application was granted, but, on an appeal taken by the plaintiff John Palermo, the Court of Common Pleas on March 5, 1954, reversed the action of the board of appeals. *Palermo* v. *Louis Paul in Stamford Corporation*, Court of Common Pleas, Fairfield County, No. 59045. On July 30, 1954, the company petitioned the defendant board to amend the zoning regulations by adding a subsection to § 14 reciting that its provisions should not apply

to a restaurant which was in existence in a general commercial zone prior to December 1, 1951. The petition did not refer to an industrial zone. On November 19, 1954, the board gave public notice that it would "hold a meeting and public hearing on December 7, 1954, at 8:15 p.m., in the City Court Room, City Hall, to consider the following amendments and changes in the Zoning Regulations: 1. Under Section 14, Dispensing of Alcoholic Liquors, add Section 6 as follows: '6—The provisions of this section shall not apply to a restaurant which was in existence on December 1, 1951 in a C-G (General Commercial) or in an Industrial District.' Petitioned by Louis Paul in Stamford Corp." The public hearing was held, and on December 20, 1954, the board gave official notice that it had passed the proposed amendment. By virtue of the amendment, the company is entitled to sell intoxicating liquors for consumption in its restaurant.

The plaintiffs advance several claims in challenging the validity of the amendment. In the first place, the action of the board was illegal, they contend, because two provisions of the Stamford charter expressly prohibit any amendment to either the zoning map or the zoning regulations which will "permit a use in any area which is contrary to the general land use established for such area by the master plan." 26 Spec. Laws 1234 § 552, 1236 § 553. The short answer is that the amendment does not permit any such thing. See *Mabank Corporation* v. *Board of Zoning Appeals,* 143 Conn. 132, 137, 120 A.2d 149. The use is already allowed by the regulations. Neither section of the charter [1] requires that a

---

[1] "Sec. 552. AMENDMENTS TO ZONING MAP AFTER THE EFFECTIVE DATE OF THE MASTER PLAN. After the effective date of the master plan the zoning map may, from time to time, be amended by the

proposed amendment be submitted to the planning board if the subject matter involves only a relaxation of restrictions upon a presently permitted land use. To hold otherwise would nullify the clear intention of the General Assembly.

The plaintiffs further contend that the board was without jurisdiction to entertain the petition to amend the regulations because the company did not qualify as a property owner, as required by law. 26 Spec. Laws 1236, § 553.1. That section recites that "any Stamford property owner or governmental agency, department, board or official may file a written petition with the zoning board for an amendment to the zoning regulations, other than the zoning map." Concededly, the company is not an owner of land, although it does own a long-term lease as well as personal property assessed by the city at $17,000. The language of § 553.1, expressed, as it is, in a general manner, does not refer solely to owners of real property. The word "property" is defined

zoning board provided, prior to any such action, the board shall hold at least one public hearing thereon, notice of which shall be given as hereinafter provided. If said board is the proponent of any such change said notice shall contain the board's reasons for such proposed change. The zoning map shall not be amended by said board to permit a use in any area which is contrary to the general land use established for such area by the master plan.

. . . . .

"Sec. 553. AMENDMENTS TO ZONING REGULATIONS (OTHER THAN THE ZONING MAP) AFTER THE EFFECTIVE DATE OF THE MASTER PLAN. After the effective date of the master plan . . . the zoning regulations, other than the zoning map, shall not be amended by the zoning board until at least one public hearing has been held thereon, notice of which shall be given as hereinafter provided. If the zoning board is the proponent of any such change said notice shall contain the board's reasons for such proposed change. Such zoning regulations shall not be amended by said board to permit a use in any area which is contrary to the general land use established for such area by the master plan." Spec. Acts 1953, No. 619 (26 Spec. Laws 1234, 1236).

as "[t]hat to which a person has a legal title." Webster's New International Dictionary (2d Ed.); *Central Hanover Bank & Trust Co.* v. *Nesbit,* 121 Conn. 682, 688, 186 A. 643. It may include everything which is the subject of ownership. *Stanton* v. *Lewis,* 26 Conn. 444, 449. That the General Assembly used the word in this embracive sense is borne out by the fact that in the very next section, which sets up a method for reviewing the action of the board in adopting amendments to the regulations, the word "landowners" appears three times. 26 Spec. Laws 1236, § 553.2. It is also noteworthy that in §§ 551, 552.2 and 552.3 of the charter the General Assembly employed the phrase "owners of . . . privately-owned land," not the term "property owner." 26 Spec. Laws 1234, 1235. The company qualified as a "property owner" within the legislative intent, and the board had jurisdiction to entertain the petition.

Nor are we impressed with the claim that if the board originally acquired jurisdiction when the petition was filed on July 30, 1954, it lost that jurisdiction because no hearing was had until December 7, 1954. Section 553.1 of the charter sets out the procedural steps for handling and disposing of petitions to amend the regulations. 26 Spec. Laws 1236. It provides, among other things, that a "petition shall be scheduled for at least one public hearing to be held within sixty days from the date [the] petition was filed." That the provision for a public hearing is mandatory is undoubtedly correct. The public are entitled to express to the board their disapproval of any proposal which, if adopted by the legislative body of the city, would affect them and their property interests. If the sixty-day requirement is also mandatory, the claim under discussion would have merit. We are satisfied, however, that it is directory.

Legislative provisions designed to secure order, system and dispatch in proceedings are ordinarily held to be directory where, as here, they are stated in affirmative terms or, to express it differently, are unaccompanied by negative words. *International Brotherhood* v. *Shapiro,* 138 Conn. 57, 67, 82 A.2d 345; *Nielsen* v. *Board of Appeals on Zoning,* 129 Conn. 285, 287, 27 A.2d 392; 50 Am. Jur. 51, § 29. Failure of the board to comply with the sixty-day requirement did not destroy its jurisdiction to amend the ordinance.

The plaintiffs also attack the jurisdiction of the board on the ground that an improper notice of the public hearing was given. Their point is this: The charter provides that if the board is the proponent of any amendment to the regulations, the notice of the hearing thereon shall contain the board's reasons for the proposed change. 26 Spec. Laws 1236, § 553. The petition of the company, the plaintiffs continue, was concerned solely with general commercial zones; the notice published by the board, however, indicated that the amendment would also apply to industrial zones; yet the notice did not contain the board's reasons for making this addition.

For the sake of discussion, we shall assume that the board was the proponent of the part of the amendment which deals with industrial zones. It is, of course, true that a failure to give proper notice constitutes a jurisdictional defect. *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201. The notice given in the case at bar, however, was a proper notice in contemplation of law. It referred to everything upon which the board proposed to act and to which the attention of the public was invited. No one could be misled by

the notice, and all affected persons were apprised of the change sought. They were fully and fairly advised of their opportunity to be heard on specific matters; this, it might be added, is the fundamental reason for any requirement of notice. See *Colonial Beacon Oil Co. v. Zoning Board of Appeals,* 128 Conn. 351, 353, 23 A.2d 151. The situation would be far different had the notice, as in *Smith* v. *F. W. Woolworth Co.,* supra, failed to state the scope of the subject matter for consideration at the public hearing. As with the sixty-day provision, the provision that the board's reasons should be incorporated in the notice when the board is the proponent of the change is merely directory. The notice was adequate and proper.

The plaintiffs further contend that the amendment is nothing more than spot zoning and, hence, invalid. Spot zoning is not permitted. *Kuehne* v. *Town Council,* 136 Conn. 452, 460, 72 A.2d 474. It is defined as "a provision in a zoning plan or a modification in such a plan, which affects only the use of a particular piece of property or a small group of adjoining properties and is not related to the general plan for the community as a whole." Maltbie, "The Legal Background of Zoning," 22 Conn. B.J. 2, 5. "Or, as is stated in *Linden Methodist Episcopal Church* v. *Linden,* 113 N.J.L. 188, 191, 173 A. 593, it is an 'attempt to wrench a single small lot from its environment and give it a new rating that disturbs the tenor of the neighborhood.'" *Eden* v. *Town Plan & Zoning Commission,* 139 Conn. 59, 63, 89 A.2d 746. It is also referred to as "piecemeal zoning." 1 Yokley, Zoning Law & Practice (2d Ed.) § 90. But calling legislative action spot zoning does not make it such. That is the weakness of the plaintiffs' present contention. No new zone is wrenched by the

amendment from existing zones. Indeed, no new zone at all is created. Spot zoning is not involved in the case.

Of the remaining claims advanced by the plaintiffs, only one is worthy of discussion. It is that the board lacked jurisdiction to enact the amendment because there had been no change in the conditions surrounding the subject matter of the amendment from the time when the regulations were originally adopted in 1951. We have commented upon comparable claims raised in other cases. *Parsons* v. *Wethersfield,* 135 Conn. 24, 29, 60 A.2d 771; *Strain* v. *Mims,* 123 Conn. 275, 287, 193 A. 754. In the former, we said (p. 30) that "ordinarily changes in zone should not be made unless new conditions have arisen or there have been substantial changes in the area, especially where a previous application for the change has been denied." We did not intend thereby to place the legislative body of a municipality in a strait jacket. The considerations ordinarily precluding zoning boards of appeal from reversing themselves unless conditions have changed do not necessarily apply to the law-making agency of a community. For this reason we had previously limited the principle, as it was expressed in the *Parsons* case, supra, by making it applicable, if at all, only when a single property is, or a very few properties are, to be affected by the proposed amendment. *Strain* v. *Mims,* supra. Furthermore, the legislative body ought to be free to amend its enactments when, for example, the purpose is to revoke or modify provisions which time or application has shown to be unwise or subject to desirable change, or when, for added example, the body desires to correct a correctable injustice wrought by the existing ordinance. *Chayt* v. *Maryland Jockey Club,* 179 Md.

390, 396, 18 A.2d 856. The amendment, however, must be reasonable and not arbitrary. *De Palma* v. *Town Plan Commission,* 123 Conn. 257, 266, 193 A. 868. And to be valid, it must have a reasonable relation to the health, safety, welfare or prosperity of the community, and not permit a use which is hostile to the general plan of zoning for the community. *State* v. *Hillman,* 110 Conn. 92, 100, 147 A. 294. The determination of when the public interest does require an amendment is within the discretion of the legislative agency. 8 McQuillin, Municipal Corporations (3d Ed.) § 25.68. The necessity for legislative action, like the expediency and wisdom of an enactment, is a question which lies beyond the judicial realm. *Nebbia* v. *New York,* 291 U.S. 502, 537, 54 S. Ct. 505, 78 L. Ed. 940; *Caires* v. *Building Commissioner,* 323 Mass. 589, 595, 83 N.E.2d 550.

The amendment in the case at bar was not addressed to only a few properties. It was one of general application, effective in the designated zones throughout the municipality for all properties upon which restaurants whose existence antedated December 1, 1951, were located. Moreover, the board may have viewed the amendment as essential to rectify an injustice. The wisdom of the change is not open to analysis by us, nor can we say that the amendment does not further the public interest.

There is no error.

In this opinion the other judges concurred.