JARVIS ACRES, INC., ET AL. *v.* ZONING COMMISSION OF
THE TOWN OF EAST HARTFORD ET AL.

HOUSE, C. J., RYAN, SHAPIRO, LOISELLE and FITZGERALD, Js.

Argued March 10—decided April 19, 1972

*William P. O'Connell, Jr.,* for the appellants (plaintiffs).

*Rolland Castleman,* with whom, on the brief, was *John S. G. Rottner,* for the appellees (defendant Fenton P. Futtner et al.).

*Edward J. Foley,* assistant corporation counsel, for the appellee (named defendant).

RYAN, J.   The plaintiffs have appealed from a judgment of the Court of Common Pleas dismissing their appeal from the action of the defendant zoning commission for the town of East Hartford in changing the zone classification of approximately twenty-three acres of land from residence 5 (R-5), industry 2 (I-2) and industry 3 (I-3) to business 1-A (B-1-A).   Abutting the parcel in question is land owned by the plaintiff Jarvis Acres, Inc., and on which is situated a retail food supermarket owned by the plaintiff Top Notch Foods, Inc.

The individual defendants, Fenton P. Futtner, Catherine F. Futtner, Victor J. Kutsavage, Myrtle F. Kutsavage and Francis G. Jones, hereinafter referred to collectively as the defendants, are the owners of three contiguous parcels of land which together comprise the aforementioned twenty-three acres located on the south side of Silver Lane, East Hartford.  By application dated August 22, 1968, the defendants Fenton P. Futtner and Catherine F. Futtner applied to the defendant zoning commis-

sion for the town of East Hartford, hereinafter referred to as the commission, for a change of zone of their 21.7 acres of the parcel in question to business 1-A (B-1-A) to allow for the construction of a shopping center. This application was disapproved by the commission on November 7, 1968, principally on the ground that "[t]he shopping center use . . . would further aggravate the traffic congestion problem presently existing on Silver Lane." Thereafter, the 1969 session of the legislature, through the efforts of the commission and other town officials, appropriated $5,000,000 for the widening and improvement of Silver Lane.[1] Armed with

---

[1] "[General Statutes] Sec. 13a-198a. BONDS. The state bond commission shall have power in accordance with the provisions of sections 13a-198a to 13a-198j, inclusive, from time to time, to authorize the issuance of bonds of the state in one or more series and in principal amounts not in the aggregate exceeding ninety-four million seven hundred thousand dollars.

"[General Statutes] Sec. 13a-198b. USE OF PROCEEDS FOR CERTAIN PROJECTS. The proceeds of the sale of said bonds and any moneys added in accordance with subdivision (53) of this section and sections 13a-198h and subsection (a) of section 13a-198i to the extent hereinafter stated, shall be used to pay or provide for the cost of planning, designing, laying out, constructing, reconstructing, relocating, improving, or signing the following several highway facilities, each of which is or is made hereby a part of the state highway system that is hereinafter sometimes referred to as a 'project' including in each case but not limited to costs and expenses of right-of-way or other property acquisitions therefor or desirable in connection therewith, expenses in connection therewith for engineering, fiscal, architectural and legal work or services, and all administrative and other expenses properly attributable thereto, except that the limitations of amount set forth in the following numbered subdivisions may be exceeded in those instances where and to the extent federal moneys and such other moneys as hereinabove referred to are added:

.    .    .    .    .

"(34)  State Road 502 from the vicinity of Connecticut Route 15 in East Hartford to the vicinity of relocated United States Route 6 in Manchester, not exceeding five million dollars."

the prospect that this legislative action would cure the problem of traffic congestion on Silver Lane, the defendants, on April 28, 1970, applied for a change of zone of the entire twenty-three-acre tract of land to business 1-A (B-1-A). Following a public hearing, the commission, on July 1, 1970, unanimously voted to change the zone in accordance with the petition subject to conditions not material to this case. In approving the application, the commission cited as reasons, inter alia: (1) its control over the property's development by reason of the special permit use provisions, and (2) "the steps already taken by the State Department of Transportation relating to the widening of Silver Lane in this area." The plaintiffs appealed to the Court of Common Pleas which found the plaintiffs Jarvis Acres, Inc., and Top Notch Foods, Inc., to be aggrieved but rendered judgment on February 5, 1971, dismissing the appeal.[2] From this judgment the named plaintiff and Top Notch Foods, Inc., hereinafter called the plaintiffs, have appealed to this court.

The plaintiffs first attack the jurisdiction of the commission on the ground that the statutory requirement as to notice was not met. The law is clear that failure to give proper notice of a hearing constitutes a jurisdictional defect, results in a lack of due process, and renders the action of the commission granting the zone change null and void. *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721; *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325, 207 A.2d 58; *Treat* v. *Town Plan & Zoning Commission,* 145 Conn. 136, 139, 139 A.2d 601; *Winslow* v.

---

[2] A third plaintiff, Wellington Poole, Inc., was found not to have been aggrieved and it did not appeal from the judgment rendered against it by the lower court.

*Zoning Board,* 143 Conn. 381, 388, 122 A.2d 789; *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 251, 83 A.2d 201; *Hartford Trust Co.* v. *West Hartford,* 84 Conn. 646, 650, 81 A. 244.

General Statutes § 8-3, the contents of which were adopted in substantially the same form by § 655.1 of the East Hartford Zoning Regulations, provides in part that: "Notice of the time and place of such hearings shall be published in the form of a legal advertisement appearing *in a newspaper* having a substantial circulation in such municipality *at least twice* at intervals of not less than two days, and the first not more than fifteen days nor less than ten days, and the last not less than two days, before such hearing." (Emphasis supplied.) The record discloses that notice of the public hearing held on May 13, 1970, was published once in the Hartford Courant on May 2, 1970, and once in the East Hartford Gazette on May 7, 1970. The plaintiffs concede (1) that both newspapers have a substantial circulation in East Hartford and (2) that the dates the notices were published conformed to the requirements of § 8-3 in that they were at least two days apart, and the first was not more than fifteen days nor less than ten days from the date of the hearing in question, and the second was not less than two days before the date of the hearing. Nor do they assert that the contents of the notice was insufficient to apprise the public of the scope of the matter under consideration.

The gravamen of the plaintiffs' contention is that the notice was improper since the statute requires that both notices be published in the "same" newspaper and that one publishing of the notice in two different newspapers will not satisfy § 8-3 of the

General Statutes. For the reasons hereinafter set forth, we hold that the legislative intent, as expressed within the statute, does not compel such an interpretation.

While we have held that the notice requirements of § 8-3 were not met where the notice was published on dates either more than or less than the required number of days prior to the hearing; *Treat* v. *Town Plan & Zoning Commission,* supra; we have not had occasion to pass on the precise issue raised by the plaintiffs in the present case.

"[T]he cardinal rule is that statutes are to be construed so as to carry out the expressed intent of the legislature. *Bridgeport* v. *Stratford,* 142 Conn. 634, 641, 116 A.2d 508; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70; *Stamford* v. *Stamford,* 107 Conn. 596, 605, 141 A. 891." *Sloane* v. *Waterbury,* 150 Conn. 24, 29, 183 A.2d 839. While the intent of the statute must be ascertained from the language used if it is clear and unambiguous; *Collins* v. *York,* 159 Conn. 150, 161, 267 A.2d 668, *Little* v. *United Investors Corporation,* 157 Conn. 44, 48, 245 A.2d 567, *Hurlbut* v. *Lemelin,* 155 Conn. 68, 73, 230 A.2d 36; where the language is of doubtful meaning, the statute is to be construed "in the light of all of its provisions, the object which it seeks to accomplish . . . and all other relevant circumstances." *McAdams* v. *Barbieri,* 143 Conn. 405, 416, 123 A.2d 182; see *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 97; *Connecticut Light & Power Co.* v. *Sullivan,* 150 Conn. 578, 581, 192 A.2d 545; *Mack* v. *Saars,* 150 Conn. 290, 294, 188 A.2d 863; *Oppenheimer* v. *Connecticut Light & Power Co.,* 149 Conn. 99, 102, 176 A.2d 63; *Landry* v. *Personnel Appeal Board,* 138 Conn. 445, 447, 86 A.2d 70.

In delving into these considerations, we find that the " 'fundamental reason for the requirement of notice is to advise all affected parties of the opportunity to be heard and to be apprised of the relief sought.' *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 693, 137 A.2d 542; *Winslow* v. *Zoning Board,* 143 Conn. 381, 389, 122 A.2d 789. Adequate notice 'will enable parties having an interest to know what is projected and, thus, to have an opportunity to protest.' " *Hartford Electric Light Co.* v. *Water Resources Commission,* supra, 110. Specifically, this court has held that the purpose behind the notice requirement of § 8-3 is "fairly and sufficiently to apprise those who may be affected by the proposed action of the nature and character of the proposed action so as to enable them to prepare intelligently for the hearing. *Edward Balf Co.* v. *East Granby,* 152 Conn. 319, 325, 207 A.2d 58." *Passero* v. *Zoning Commission,* 155 Conn. 511, 514, 235 A.2d 660; see *Kleinsmith* v. *Planning & Zoning Commission,* 157 Conn. 303, 310, 254 A.2d 486. What is required is not actual notice, but, rather, constructive notice. *Edward Balf Co.* v. *East Granby,* supra. This purpose, to notify constructively as much of the populace as possible, is further borne out by analyzing the language used in predecessors to § 8-3. The legislature first enacted the language requiring publication "in a newspaper . . . at least twice" in 1939. Cum. Sup. 1939, § 132e. Prior to that time, the statutes only required one publication of the notice. "At least fifteen days' notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality." Rev. 1930, § 425. Apparently, the legislature was not satisfied that one publication would reach as much of the populace as it would like, and, therefore,

two publications of the notice became the law in Connecticut by legislative mandate.

In light of these considerations, we do not see how the legislative purpose could be frustrated by the publication of the notice in two different newspapers rather than twice in the same newspaper. To the contrary, the legislative purpose would be enhanced in that it is logical to assume that the former manner of publication would reach more of the populace than the latter. In addition, if the intent of the legislature were, as the plaintiffs contend, that notice must be published twice in the "same" newspaper, it could easily have said so. " '[W]e cannot speculate upon any intention not appropriately expressed in the language of the act itself.' . . . Legislative intent is to be found, not in what the legislature meant to say, but in the meaning of what it did say." *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 98, 291 A.2d 721; see *State ex rel. Barnard* v. *Ambrogio,* 162 Conn. 491, 498, 294 A.2d 529; *Baker* v. *Ives,* 162 Conn. 295, 303, 294 A.2d 290. It is convincingly clear that the legislative intent is simply that on each occasion on which the notice is published that it be published in a newspaper having a substantial circulation in the municipality.

Finding that a proper construction of the notice requirement in § 8-3 does not compel the interpretation placed on it by the plaintiffs, we conclude that the publication in the case at bar conformed with the legislative mandate as expressed in § 8-3 of the General Statutes.

The gravamen of the plaintiffs' appeal is that the commission acted illegally, arbitrarily and in abuse of its discretion in granting the change of zone in that there was insufficient evidence before the commission to show (1) that there was a "reasonable

probability" the improvements to Silver Lane would be made, and (2) even if made, the improvements would sufficiently alleviate the anticipated traffic congestion resulting from such a change of zone.

An important purpose of zoning is to alleviate traffic congestion. General Statutes § 8-2 provides, inter alia, that zoning regulations "shall be designed to lessen congestion in the streets." See *Wilson* v. *Planning & Zoning Commission,* 162 Conn. 19, 23, 291 A.2d 230; *Vece* v. *Zoning & Planning Commission,* 148 Conn. 500, 503, 172 A.2d 619; *Whalen* v. *Town Plan & Zoning Commission,* 146 Conn. 321, 327, 150 A.2d 312; *Gordon* v. *Zoning Board,* 145 Conn. 597, 601, 145 A.2d 746; *Pecora* v. *Zoning Commission,* 145 Conn. 435, 440, 144 A.2d 48. "It is not the over-all volume of daily traffic, but 'congestion in the streets,' that is, density of traffic, which is referred to in the statute." *Pecora* v. *Zoning Commission,* supra, 440; see *Wilson* v. *Planning & Zoning Commission,* supra; *Service Realty Corporation* v. *Planning & Zoning Board of Appeals,* 141 Conn. 632, 638, 109 A.2d 256. The widening and improving of the road in question, Silver Lane, depends on the affirmative actions of persons and government agencies over which the commission has no authority or control. *Wilson* v. *Planning & Zoning Commission,* supra, 25; *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Gordon* v. *Zoning Board,* supra, 603. "We have had occasion to consider similar situations in which the zoning authority had no control over street or highway improvements affecting zoning requirements. See *Brustein* v. *Zoning Commission,* 151 Conn. 101, 105, 193 A.2d 523; *Luery* v. *Zoning Board,* 150 Conn. 136, 145, 187 A.2d 247; *Whalen* v. *Town Plan & Zoning Commission,* supra, 326; *Gordon* v. *Zoning Board,*

145 Conn. 597, 603, 145 A.2d 746. As indicated by these cases, a change of zone which is dependent for its proper functioning on action by other agencies and over which the zoning commission has no control cannot be sustained unless, at least as in the *Luery* case, the necessary action appears to be a *probability.*" (Emphasis supplied.) *Faubel* v. *Zoning Commission,* 154 Conn. 202, 210–11, 224 A.2d 538; see *Wilson* v. *Planning & Zoning Commission,* supra; *Lurie* v. *Planning & Zoning Commission,* 160 Conn. 295, 302, 278 A.2d 799; *Stiles* v. *Town Council,* 159 Conn. 212, 221, 268 A.2d 395; *Farina* v. *Zoning Board of Appeals,* 157 Conn. 420, 424, 254 A.2d 492. "In the absence of some reasonable assurance . . . that provision would be made for the requisite highway and traffic flow changes for the purposes of alleviating traffic congestion the commission had no authority to change the zone." *Wilson* v. *Planning & Zoning Commission,* supra.

In the present case, the record clearly indicates that the August, 1968, application for a zone change was disapproved at the executive session meeting of the commission held on November 7, 1968, on the ground that the "zone change would further aggravate the traffic congestion problem" then in existence on Silver Lane. In granting the application of April, 1970, the commission reversed its previous position, citing as a reason its awareness "of the steps already taken by the State Department of Transportation relating to the widening of Silver Lane in this area."

The record and appendices to the briefs, however, are completely devoid of any evidence before the commission which would give "reasonable assurances" that Silver Lane would be improved and

widened. The only evidence presented at the public hearing held before the commission on May 13, 1970, was the testimony of Attorney John Rottner, counsel for the applicants, and testimony from the then director of development for the town of East Hartford, Louis Dell'Angela. This testimony, admittedly hearsay, was to the effect that they had been told by members of the state highway department that Silver Lane was to be improved and the project was to begin at the outside date of December, 1970.[3] In addition, the 1969 session of the General Assembly had enacted General Statutes § 13a-198b (34) allocating $5,000,000 for the widening and improving of that road.

This is, as a matter of law, not enough evidence on which a commission could conclude that there was a "reasonable probability" that road improvements over which the commission had no control would be instituted and the traffic problem solved so as to justify the granting of a zone change. Unlike similar cases in which zoning changes have been upheld, here, inter alia, (1) no representatives from the highway department testified, (2) no correspondence or official statement from the highway department was introduced, (3) no traffic experts testified, (4) no evidence as to traffic studies and projections was introduced, (5) no contracts for the work had been executed, and (6) no definite starting and ending dates were specified. In addition, no evidence was before the commission to show that even if the road would be improved and widened that such action would relieve the traffic problem then in existence.

---

[3] While the outside starting date was to be December, 1970, the plaintiffs point out that at the time of the writing of their brief, about one year later, the work had not, in fact, yet begun.

There is error, the judgment is set aside and the case is remanded with direction to sustain the appeal.

In this opinion the other judges concurred.