RICHARD D. LAUER *v.* ZONING COMMISSION
OF THE TOWN OF REDDING ET AL.
(14255)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued September 25—decision released December 3, 1991

*Nancy Burton,* for the appellant (plaintiff).

*Michael N. LaVelle,* for the appellee (named defendant).

*Helen L. McGonigle,* for the appellee (defendant John Angeloni).

BORDEN, J. The plaintiff, Richard Lauer, appeals from the trial court's dismissal of a zoning appeal from a decision of the named defendant, the zoning commission of the town of Redding, granting a special permit to the defendant John Angeloni for a horse riding academy.[1] The plaintiff claims that the trial court improperly dismissed his appeal because: (1) the failure of the commission to give notice of the public hearing, on Angeloni's special permit application, to the adjoining town of Bethel pursuant to General Statutes (Rev. to 1989) § 8-3h[2] deprived the commission of sub-

---

[1] The Appellate Court granted certification from the judgment of the trial court and we transferred the appeal to this court pursuant to Practice Book § 4023.

[2] "[General Statutes (Rev. to 1989)] Sec. 8-3h. NOTICE TO ADJOINING MUNICIPALITIES. The zoning commission of any municipality shall notify

ject matter jurisdiction over the application; (2) the commission's grant of the special permit allowed an impermissible second principal use on Angeloni's property, in violation of the Redding zoning regulations; and (3) the trial court made a clearly erroneous finding of fact in its determination that the plaintiff had presented no evidence that two commission members, who were absent during one of the two public hearings on the special permit application, had not sufficiently acquainted themselves with the issues raised at that hearing to make an informed decision on the application. We disagree with the plaintiff's first two claims, and order a remand for further articulation by the trial court on the third claim.

The relevant facts are as follows. Angeloni owns 11.6 acres of land designated as lot 5 of an eleven lot subdivision known as "Huntington Estates" in the town of Redding. He applied to the commission for a special permit to operate a horse riding academy on lot 5 which, at the time of the application, was already improved by a residence. Pursuant to General Statutes

the clerk of any adjoining municipality of the pendency of any application, petition, request or plan concerning any project on any site in which: (1) Any portion of the property affected by a decision of such zoning commission is within five hundred feet of the boundary of the adjoining municipality; (2) a significant portion of the traffic to the completed project on the site will use streets within the adjoining municipality to enter or exit the site; (3) a significant portion of the sewer or water drainage from the project on the site will flow through and significantly impact the drainage or sewerage system within the adjoining municipality; or (4) water runoff from the improved site will impact streets or other municipal or private property within the adjoining municipality. Such notice shall be made by registered mail and shall be mailed within seven days of the date of receipt of the application, petition, request or plan. No hearing may be conducted on any application, petition, request or plan unless the adjoining municipality has received the notice required under this section. Such adjoining municipality may, through a representative, appear and be heard at any hearing on any such application, petition, request or plan."

§ 8-3c (b)[3] the commission held public hearings on the application on April 12 and April 26, 1989. Although the town of Bethel adjoins the town of Redding and is in close proximity to Angeloni's property,[4] notice of the hearing was not given to the clerk of the town of Bethel pursuant to § 8-3h. Commission members Charles Beeston, who was eighty-five years old at the time and has since died, and Edwin Gienger were absent during the April 12 session. A tape recording and transcript of the April 12 session were available for their review. Beeston and Gienger were present during the April 26 hearing. On May 24, 1989, the commission voted three to two to approve the special permit application subject to certain conditions.[5] Beeston and Gienger cast two of the three majority votes.

The plaintiff appealed[6] to the Superior Court, claiming that: (1) the special permit approval was jurisdictionally defective because the town of Bethel had not been given notice pursuant to § 8-3h; (2) the riding academy constituted an impermissible second principal use of lot 5; and (3) the votes of Beeston and Gienger, which were necessary for approval, were invalid because Beeston and Gienger had failed properly to inform themselves of the issues raised at the April 12 hearing. The trial court dismissed the plaintiff's appeal. The court determined that: (1) the plaintiff was not entitled to rely on § 8-3h because that statute was

[3] General Statutes § 8-3c (b) states in relevant part: "The zoning commission . . . of any municipality shall hold a public hearing on an application or request for a special permit . . . ."

[4] The riding academy would front on Sunset Hill Road in Redding. Sunset Hill Road continues northward into Bethel. The town of Bethel is approximately 1000 feet north of the riding academy.

[5] One condition was that the horse academy post a sign directing exiting traffic to turn right onto Sunset Hill Road. A right turn onto Sunset Hill Road leads north toward the town of Bethel 1000 feet away.

[6] The plaintiff owns property at 155 Sunset Hill Road which is within 100 feet of the land involved in the decision and is, therefore, statutorily aggrieved under General Statutes § 8-8 (b) (1).

intended to protect the interests of adjoining municipalities from the impact of neighboring zoning decisions and was not jurisdictional in nature; (2) the riding academy is a permitted special use that can coexist with a principal use; and (3) the plaintiff "has not presented any evidence which would disclose that the two zoning board members who were not present at the April 12, 1989 hearing failed to acquaint themselves with those proceedings." This appeal followed.

I

The plaintiff first claims that the failure to give notice to the town of Bethel as required by General Statutes § 8-3h deprived the commission of subject matter jurisdiction over the special permit application. He also claims that the trial court improperly concluded that, although he was aggrieved, he was not entitled to raise the issue of a violation of § 8-3h. He argues that, since he is aggrieved, he can raise any issue of improper conduct by the commission, including a violation of § 8-3h. The defendants concede that the commission did not properly notify the Bethel town clerk pursuant to the statute.[7] They argue that compliance with § 8-3h is not a prerequisite for subject matter jurisdiction, and that the plaintiff is not entitled to complain of a failure to give notice to the town of Bethel. We agree with the defendants.

"We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and

---

[7] The defendants also claim that the commission was not required to give notice pursuant to General Statutes § 8-3h in this case because a significant portion of the traffic will not use streets "within the adjoining municipality to enter or exit the [horse academy]." They argue that § 8-3h does not apply because the entrance to and exit from the riding academy are not located in or on the border of Bethel. Since we conclude that the plaintiff is not entitled to raise the issue of notice under § 8-3h, we need not consider this argument.

giving effect to the apparent intent of the legislature. *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. *Dart & Bogue Co.* v. *Slosberg,* 202 Conn. 566, 572, 522 A.2d 763 (1987) . . . ." *Texaco Refining & Marketing Co.* v. *Commissioner,* 202 Conn. 583, 589, 522 A.2d 771 (1987). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. *LeConche* v. *Elligers,* 215 Conn. 701, 709, 579 A.2d 1 (1990), quoting *Shea* v. *First Federal Savings & Loan Assn. of New Haven,* 184 Conn. 285, 288, 439 A.2d 997 (1981). The same principle applies to administrative agencies; *Castro* v. *Viera,* 207 Conn. 420, 428, 541 A.2d 1216 (1988); including zoning authorities. *Langer* v. *Planning & Zoning Commission,* 163 Conn. 453, 458, 313 A.2d 44 (1972)." (Internal quotation marks omitted.) *Caserta* v. *Zoning Board of Appeals,* 219 Conn. 352, 358, 593 A.2d 118 (1991).

There is no question that, absent § 8-3h, the commission had subject matter jurisdiction to consider the special permit application for the riding academy. See General Statutes § 8-3c (b). The issue presented, therefore, is whether the legislature intended to make § 8-3h notice an additional requirement for subject matter jurisdiction. "That determination must be informed by the established principle that every presumption is to be indulged in favor of jurisdiction." *LeConche* v. *Elligers,* supra, 709–10. Application of these principles to the present case leads us to conclude that § 8-3h provides for personal notice to an adjoining town and is, therefore, not subject matter jurisdictional.

We first examine the language of § 8-3h. At the time of the April 12, 1989 hearing, the statute required a zoning commission to notify, by registered mail,[8] the clerk of an adjoining town of the pendency of certain applications, within seven days of receiving the application. Thus, the language of this statute provides for notice to a specific recipient, as opposed to published notice to the general public and is, therefore, akin to a personal notice statute.

This court has distinguished between statutorily required published notice to the general public and statutorily required personal notice to specific individuals.[9] We have long held that failure to give newspaper notice is a subject matter jurisdictional defect; see *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 44, 301 A.2d 244 (1972); *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 109, 291 A.2d 721 (1971); *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 94, 111 A.2d 552 (1955); and that

---

[8] By Public Acts 1989, No. 89-175, § 3, the legislature changed the method of notice from registered mail to certified mail, return receipt requested.

[9] Compare *Jarvis Acres, Inc.* v. *Zoning Commission,* 163 Conn. 41, 301 A.2d 244 (1972) (failure to publish notice in newspaper pursuant to General Statutes § 8-3 constitutes jurisdictional defect), *Hartford Electric Light Co.* v. *Water Resources Commission,* 162 Conn. 89, 291 A.2d 721 (1971) (insufficient published notice to general public constitutes due process violation and, therefore, is jurisdictional defect), *Slagle* v. *Zoning Board of Appeals,* 144 Conn. 690, 137 A.2d 542 (1957) (publication of notice in newspaper of hearing constitutes jurisdictional defect when published only three days before hearing), *Winslow* v. *Zoning Board,* 143 Conn. 381, 122 A.2d 789 (1956) (inadequate public notice constitutes jurisdictional defect), and *Smith* v. *F. W. Woolworth Co.,* 142 Conn. 88, 111 A.2d 552 (1955) (inadequate publication of notice of public hearing in newspaper is jurisdictional defect), with *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 362 A.2d 519 (1975) (failure by the zoning commissioner to give written notice of permit application to two city officials was not jurisdictional defect because each official had actual notice and, therefore, waived personal notice), and *Schwartz* v. *Hamden,* 168 Conn. 8, 357 A.2d 488 (1975) (where record owners of land had actual notice, failure to notify them as required by statute was not jurisdictional defect because owners waived personal notice).

"[s]ubject matter jurisdiction cannot be waived or conferred by consent." *Demar* v. *Open Space & Conservation Commission,* 211 Conn. 416, 424, 559 A.2d 1103 (1989). We have also long held, however, that failure to give personal notice to a specific individual is not a jurisdictional defect; see *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 362 A.2d 519 (1975); *Schwartz* v. *Hamden,* 168 Conn. 8, 357 A.2d 488 (1975); and that "[l]ack of personal notice may be waived by the party entitled to it." *Schwartz* v. *Hamden,* supra, 15.

In *Schwartz* v. *Hamden,* supra, we discussed the different purposes of published newspaper notice and personal notice. The purpose of a personal notice statute is to "give *actual* notice to [the person entitled to notice]." (Emphasis added.) Id., 15. Therefore, if a person has actual notice of a hearing, the failure to give mailed notice does not frustrate the purpose of the notice provision. Id.

The purpose of publishing notice to the general public, however, is to notify, "by means of legal advertisements, as much of the population as possible of contemplated zoning actions." Id., 14. In the absence of newspaper publication, unknown individuals with an interest in zoning matters would have no way of learning what zoning decisions were being contemplated. Failure to provide such notice deprives the administrative tribunal of subject matter jurisdiction "even when the complaining party appeared at the public hearing since the legislative intent to notify the public constructively would otherwise be frustrated." Id., 15. Thus, what is "required is not actual notice, but, rather, constructive notice." *Jarvis Acres, Inc.* v. *Zoning Commission,* supra, 47.

The reasoning in *Schwartz* is applicable to the present case. The notice requirement of § 8-3h was designed to give a town the opportunity to express its views

about zoning actions contemplated by a neighboring town. It was not designed to give constructive notice to the general public.

This conclusion is bolstered by an examination of the complex factual inquiries that the zoning commission must make within a very brief time period. When the provisions of a statute are subject matter jurisdictional in nature, those provisions must be strictly complied with. See, e.g., *Hillcroft Partners* v. *Commission on Human Rights & Opportunities,* 205 Conn. 324, 326, 533 A.2d 852 (1987). Section 8-3h requires the zoning commission, within seven days of receipt of the application, to make detailed factual determinations as to the impact on adjoining towns of traffic, sewer drainage and water runoff. Since such detailed factual determinations are often difficult to make, especially within such a short time period, it is unlikely that the legislature intended the commission to be deprived of subject matter jurisdiction by a failure to comply strictly with § 8-3h.

An examination of the purpose of § 8-3h as found in its legislative history also suggests that this statute was not intended by the legislature to create a subject matter jurisdictional requirement. Members of the General Assembly suggested that the purpose of the § 8-3h notice requirement was to allow an adjoining town an opportunity to be heard when a zoning decision in a neighboring town might have an impact on the adjoining town.[10] The statute was not enacted to give con-

[10] "[This] bill simply requires that [if] a development project . . . is close enough to a neighboring town and has a specific set of impacts . . . the neighboring town, will be notified and, therefore, have an opportunity to appear and make their views known. . . . [The bill] at least make[s] sure a town has an opportunity to comment . . . ." 30 H.R. Proc., Pt. 16, 1987 Sess., p. 6031, remarks of Representative Miles S. Rapoport.

"[This bill] will allow municipalities which have the potential to be significantly affected by activities in adjoining municipalities, at least a fair opportunity to be heard before the adjoining municipality acts on the zoning matter . . . ." 30 S. Proc., Pt. 9, 1987 Sess., pp. 3290–91, remarks of Senator Thomas J. Sullivan.

structive notice, by means of legal advertisement, to as much of the population as possible. The general public would already be on notice by published newspaper notice given pursuant to General Statutes § 8-3c (b).

We recognize, as does the dissent, that some language in § 8-3h, namely, that "[n]o hearing may be conducted on any application . . . unless the adjoining municipality has received the notice required under this section," could, if read literally and out of the context of the entire statute, suggest a contrary result. We conclude, nonetheless, that to give this language subject matter jurisdictional status would require strict compliance; see, e.g., *Hillcroft Partners* v. *Commission on Human Rights & Opportunities,* supra, 326; that would, in turn, lead to bizarre results. Under the plaintiff's interpretation, if the town of Bethel, including all its pertinent local government officials, had had actual notice of the hearing—indeed, even if those officials had participated in the hearings but had not received formal notice pursuant to § 8-3h—the town of Bethel could later successfully claim that the failure of the Redding zoning commission to notify the Bethel town clerk by mail had deprived the commission of subject matter jurisdiction. Since "[s]ubject matter jurisdiction cannot be waived or conferred by consent"; *Demar* v. *Open Space & Conservation Commission,* supra, 424; the hearing would be null and void despite the fact that Bethel had actual notice. We decline to give § 8-3h such an interpretation. "Common sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." *Spero* v. *Zoning Board of Appeals,* 217 Conn. 435, 441, 586 A.2d 590 (1991).

We also acknowledge the remarks in the legislative history by Representative Richard Blumenthal that "[c]lerks [of zoning commissions] ought to exercise a great deal of caution . . . but give the benefit of the

doubt [to the adjoining municipality] whenever there is any question that there may be an impact that would fit the requirements of this bill . . . ." 30 H.R. Proc., Pt. 16, 1987 Sess., p. 6032. We do not read this statement, however, as the dissent apparently does, to require the conclusion that § 8-3h notice was intended to be subject matter jurisdictional. It simply means that when the statute applies, that is, where the predicate facts are likely to exist; see footnote 2, supra; an adjoining town is entitled to personal notice, and if there is any doubt about that applicability, the statute is to be construed liberally.

Having concluded that § 8-3h provides for personal notice to adjoining municipalities and is, therefore, not subject matter jurisdictional, we also conclude that the plaintiff was not entitled to raise as an issue the failure to comply with the statute's terms. This plaintiff was no more entitled to raise noncompliance with § 8-3h than he would have been entitled to complain of a failure to give personal notice to a neighbor of his who also was statutorily aggrieved. Furthermore, we have consistently held that "[l]ack of personal notice may be waived by the party entitled to it." *Schwartz* v. *Hamden,* supra, 15. Since the town of Bethel was the only entity entitled to waive personal notice under § 8-3h, it follows that only the town of Bethel would be entitled to raise noncompliance with § 8-3h as an issue.[11]

[11] The dissent argues that our reliance on *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 362 A.2d 519 (1975), and *Schwartz* v. *Hamden,* 168 Conn. 8, 357 A.2d 488 (1975), is misguided. In the present case, the dissent argues, there is nothing in the record to indicate that Bethel had actual notice of the application, unlike the situation in those cases, where persons entitled to statutorily required personal notice had actual notice. The dissent's argument assumes that the issue of whether Bethel had actual notice is relevant to our holding in this case. It is not. Our holding that General Statutes § 8-3h notice is not jurisdictional depends not on whether Bethel had such notice, but on the terms of the statute. Our citations to *Sachem's Head Assn.* and *Schwartz* are simply for the purpose of demonstrating that compliance with a personal notice statute, unlike a published notice statute, is not a subject matter jurisdictional requirement and, therefore, can be waived.

## II

The plaintiff next claims that the granting of the application permitted an illegal second principal use of the property in violation of the Redding zoning regulations. The defendants respond that the riding academy is a permitted special use under the regulations that may coexist with a residence. We agree with the defendants.

Sections 4.2 through 4.5 of the Redding zoning regulations categorize the zoning districts for Redding as residential, business, office and research, and light industrial. The regulations state that the permissible uses in residential zones are principal uses, accessory uses and special uses. Section 4.2.3 of the regulations states that a riding academy is a permitted special use in a residential zone.[12]

The plaintiff does not dispute that a riding academy is a permitted use on residentially zoned property. Instead, he argues that, since there already is a pre-existing residence on the property, that residence must be the principal use of the property, and that a riding academy would be an impermissible second principal use in violation of section 3.6 of the Redding zoning regulations. We disagree. Under the circumstances of this case, the commission was entitled to conclude that when the riding academy is constructed on the site it will supplant the residence as the principal use of the property and that the residence will become an accessory use to that of the riding academy.

Section 3.6 of the regulations states in pertinent part that "[w]ithin Residential zones there shall not be more

[12] Section 4.2.3 of the Redding zoning regulations states in pertinent part that "[s]ubject to a Special Permit granted by the Commission . . . the following uses may be authorized . . . (j) Livery stables, riding academies, livestock farms, and forest sawmills . . . ."

than *one* principal use, along with its permitted accessory uses and buildings, on each lot." (Emphasis in original.) Section 8.1.172 defines "principal use" as "[t]he major or dominant use of the site, in terms of building space, land utilization and character of activities." There can be no question that, on this record, the riding academy will be the "major or dominant use of the site, in terms of building space, land utilization and character of activities." Apart from the residence already located on lot 5, virtually the entire balance of the 11.6 acre lot will be devoted to stable space, a riding arena, pasture facilities for the horses and parking. Furthermore, the plaintiff concedes that there was evidence before the commission that Angeloni would continue to live in the residence while operating the riding academy. Such an on-site living arrangement would ordinarily be necessary to care for the horses, and to respond in case of fire, sickness or some other unforeseen emergency.

The plaintiff argues, however, that because § 4.2.1[13] of the regulations specifically permits a residence to operate as a principal use, once a residence is constructed it must continue as the principal use because it was built first.[14] The Redding zoning regulations,

---

[13] Section 4.2.1 of the Redding zoning regulations states in pertinent part: "Any of the following [are permitted principal uses]:

"(a) A detached single-family dwelling, one per lot.

"(b) Public and private open space reservations, where maintained in a natural condition without buildings or activities areas.

"(c) Farming, forestry and horticulture, as provided by section 5.14."

A single-family dwelling is defined in § 8.1.230 of the regulations as "[a] detached residence . . . ."

[14] The plaintiff also argues that because a residence, once erected, must continue to be the principal use of the property, a riding academy can only be categorized as an accessory use. The plaintiff notes that because a riding academy is not a specifically named accessory use under § 3.7 of the Redding zoning regulations, it cannot be a permitted accessory use. Since, however, in this case the riding academy is a permitted special use, and not an accessory use, this argument is without merit.

however, do not preclude a permitted principal use from coexisting as an accessory use with a later constructed permitted special use. " 'A zoning ordinance is a local legislative enactment, and in its interpretation the question is the intention of the legislative body as found from the words employed in the ordinance. . . .' " *Harlow* v. *Planning & Zoning Commission,* 194 Conn. 187, 193, 479 A.2d 808 (1984). " '[T]he courts cannot, by construction, read into statutes provisions which are not clearly stated.' " Id. Simply because a residence is a permitted principal use at some time does not mean that it must always remain the principal use when a more dominant use is constructed later. Indeed, the Redding zoning regulations specifically recognize a residence as a use accessory to the permitted special uses of schools and churches.[15] We therefore construe the zoning regulations as contemplating that a residence may operate as an accessory use with a permitted special use.

The plaintiff concedes that the key to his argument depends on which use first existed on the site. Under his interpretation, if the riding academy had been built first it would be the principal use of the property and a later constructed residence could coexist with it as an accessory use because the academy would remain the principal use, whereas, if the residence had been built first, the riding academy could be constructed only to the extent that it did not dominate the site. Under this argument, therefore, if there were a residence on a site and the owner wished to construct a dominant horse academy, he would be required to raze the residence, erect the riding academy and then rebuild the

---

[15] Section 4.2.3 of the Redding zoning regulations allows as permitted special uses: "(a) Public schools and private schools . . . *including customary accessory buildings . . . such as . . . faculty residences . . . .*

"(b) Churches . . . *including accessory parish house . . . ."* (Emphasis added.)

residence as an accessory use. We reject this scenario because "[c]ommon sense must be used in construing the regulation, and we assume that a rational and reasonable result was intended by the local legislative body." *Spero* v. *Zoning Board of Appeals,* supra, 441.

### III

The plaintiff's final claim is that the votes of commission members Beeston and Gienger, who were absent during the first of two public hearings on the application, were invalid because Beeston and Gienger did not sufficiently acquaint themselves with the issues raised and the evidence and arguments presented at that hearing to make an informed decision on the application. The trial court found that the "plaintiff [did] not [present] any evidence which would disclose that the two zoning board members who were not present at the April 12, 1989 hearing failed to acquaint themselves with those proceedings," and, therefore, did not satisfy his burden of proof. Read literally, as the plaintiff suggests, this finding would be clearly erroneous because the plaintiff *did* present evidence to the trial court that, if believed, could support a finding that Beeston and Gienger did not acquaint themselves with the April 12 hearing.

The defendants suggest, however, that in order to make sense of this finding in the absence of a further articulation by the trial court, the court's language should be read as meaning that the plaintiff had not presented any *credible* evidence that either Gienger or Beeston had failed to acquaint himself with the April 12 proceedings. Understood in this sense, the defendants argue, the finding is adequately supported by the evidence and is, therefore, not clearly erroneous.

We agree with the defendants that we should read the trial court's determination as meaning that the plaintiff presented no such *credible* evidence. This com-

ports with our ordinary practice of reading an ambiguous trial court record so as to support, rather than contradict, its judgment. *Bell Food Services, Inc.* v. *Sherbacow,* 217 Conn. 476, 482, 586 A.2d 1157 (1991). We also agree with the defendants that the court's finding, read in this light, was not clearly erroneous with respect to Gienger, but we are sufficiently in doubt about its finding with respect to Beeston that we deem a remand for further articulation to be in order.

General Statutes § 8-3c (b) provides in part that "[t]he zoning commission . . . shall hold a public hearing on [a special permit] application . . . ." Although this statute does not require the presence at the public hearing of a zoning commission member as a condition precedent for that member to vote on a special permit application, an absent commission member must at least acquaint "himself sufficiently with the issues raised and the evidence and arguments presented at the public hearing in order to [make] an informed judgment." *Loh* v. *Town Plan & Zoning Commission,* 161 Conn. 32, 42, 282 A.2d 894 (1971); see also *Dana-Robin Corporation* v. *Common Council,* 166 Conn. 207, 217, 348 A.2d 560 (1974). Whether such a member has discharged his obligation to acquaint himself is in the first instance a question of fact for the trial court. See, e.g., *Dana-Robin Corporation* v. *Common Council,* supra. The factual finding of the trial court on this issue must stand unless it is clearly erroneous. *Holy Trinity Church of God in Christ* v. *Aetna Casualty & Surety Co.,* 214 Conn. 216, 223, 571 A.2d 107 (1990). The party who challenges the action of the commission as illegal in this respect has the burden of proof. *Loh* v. *Town Plan & Zoning Commission,* supra. "If, however, the factual or legal basis of a trial court's decision is unclear, ambiguous, incomplete, or the court has failed to state any basis for its decision, this court has the power to remand the case for further articulation of

the basis of the trial court's decision pursuant to Practice Book § 4061." *Rostain* v. *Rostain,* 213 Conn. 686, 694, 569 A.2d 1126 (1990).

We first turn to Gienger's testimony at trial and the trial court's determination that the plaintiff failed to sustain his burden of proof of illegality with respect to Gienger. We conclude that, because Gienger's credibility was not in issue, the trial court's finding is adequately supported by the evidence and is, therefore, not clearly erroneous.

Gienger testified at trial that he had read the minutes of the hearing and all other pertinent reports. He also testified that he did not read the transcript of the hearing that was available nor did he listen to the tape. Our review of the record, however, discloses that the other reports that were marked as exhibits contained enough information discussed in the first hearing so that the trial court could reasonably conclude that Gienger did sufficiently acquaint himself with that hearing. Much of the April 12 hearing involved reading to the public the data that was later reviewed by Gienger. The other relevant information discussed in that hearing consisted of general comments that were later adequately discussed in the April 26 hearing and the May 24 deliberations, when Gienger was present.

The situation with respect to Beeston is different. We conclude here that because Beeston's credibility was in issue at trial, the factual basis of the trial court's decision with respect to him is unclear and that the interests of justice require a remand for further articulation by the trial court.[16]

---

[16] Ordinarily the appellant has the responsibility to seek an articulation by the trial court in order to furnish an adequate appellate record. *Southington* v. *State Board of Labor Relations,* 210 Conn. 549, 563–64, 556 A.2d 166 (1989). We decline to dispose of the case on this basis, however, because the trial court's finding, although ambiguous with respect to Beeston on close appellate examination, was sufficiently clear to mislead the plaintiff into believing that it should be addressed on appeal as clearly erroneous.

Beeston did not testify in person in the trial court due to his ill health. The plaintiff, however, introduced into evidence his deposition over the objection of the defendants. The defendants claimed that the deposition was inadmissible because Beeston was incompetent to testify at the time of the deposition and could not remember at all what he had done to compensate for his absence from the April 12 hearing. The trial court stated that it would read the deposition and then determine how much weight it would give to the testimony of Beeston.

Given Beeston's unavailability, the trial court properly considered the contents of his deposition. Nonetheless, the nature of Beeston's testimony in his deposition leaves us with doubt as to what the trial court meant by its finding with respect to that testimony. Beeston testified that he had not read the transcript or listened to the tape of the April 12 hearing. He also testified that he had reviewed no other documentation submitted at that hearing, and that he had read only newspaper accounts of the commission minutes. He also testified that his memory was good enough to state that he had never reviewed the letters and documents introduced at the April 12 hearing. If this testimony had been credited, the trial court would have been required to conclude, as a matter of law, that Beeston had failed to acquaint "himself sufficiently with the issues raised and the evidence and arguments presented at the [April 12] public hearing in order to [make] an informed judgment." *Loh* v. *Town Plan & Zoning Commission,* supra, 42.

Beeston also testified, however, that he did not remember *at all* what he did to familiarize himself with the application. He also stated that he had a terrible memory and that his memory was not good enough to make a statement as to whether he reviewed letters and documents. On the basis of this testimony, the trial

court could reasonably have concluded that, on the date the deposition was given, Beeston did not remember at all how he familiarized himself with the April 12 hearing and that, therefore, the plaintiff had simply failed to carry his burden of proof with respect to Beeston.

Our difficulty is that we cannot discern, from the trial court's language, which of these two interpretations of its finding comports with the trial court's intent. Therefore, we remand this case to the trial court for an articulation of the factual conclusions that the court drew from Beeston's deposition concerning what he remembered at the time of the deposition.

If the trial court credited the testimony of Beeston and believed that Beeston only read the newspaper accounts of the minutes of the April 12 hearing, then we order that the trial court's judgment be reversed and that the plaintiff's appeal be sustained by the trial court, because in that case the plaintiff would have established that Beeston did not sufficiently acquaint himself with the April 12 hearing. If, however, the trial court determined that, when he gave his deposition, Beeston could not remember at all how he had acquainted himself with the April 12 hearing, then we order that the trial court's judgment be affirmed, because in that case the plaintiff would have failed to sustain his burden of proving that Beeston had not adequately acquainted himself with the April 12 hearing.

The judgment is affirmed in part and the case is remanded for further proceedings in accordance with this opinion.[17]

In this opinion PETERS, C. J., GLASS and COVELLO, Js., concurred.

SHEA, J., dissenting. I disagree with the majority that the failure to notify the town of Bethel of the hearing

---

[17] The trial court having returned an articulation finding that Beeston could not remember how he had acquainted himself with the April 12 hearing, that court's judgment is affirmed.

on John Angeloni's special permit application pursuant to General Statutes § 8-3h did not invalidate the granting of the application by the Redding zoning commission because of a violation of that statute. After specifying the circumstances under which notice to an adjoining municipality is required[1] and the procedure for giving such notice, § 8-3h provides: "No hearing may be conducted on any application . . . unless the adjoining municipality has received the notice required under this section." This prohibition against conducting a hearing on an application in the absence of notice to a municipality entitled thereto plainly deprived the zoning commission of its legal authority to consider the application, thus impairing jurisdiction to grant it.

In reaching the contrary conclusion, the majority relies on *Sachem's Head Assn.* v. *Lufkin,* 168 Conn. 365, 362 A.2d 519 (1975), in which we held that the receipt of actual notice by a party cured the failure to give it the notice prescribed by statute. The majority also relies on *Schwartz* v. *Hamden,* 168 Conn. 8, 13–15, 357 A.2d 488 (1975), in which we concluded that the failure to notify a person of a hearing as statutorily required was waived when that person appeared at the hearing. Nothing in the record of this appeal, however, indicates that Bethel had actual notice of Angeloni's application before the first hearing or that anyone appeared at the hearing in its behalf. Furthermore, the statutes

---

[1] The plaintiff claims that "a significant portion of the traffic to [the riding academy] will use streets within [the town of Bethel] to enter or exit the site." General Statutes § 8-3h. The basis for this claim is not only that the road providing access to Angeloni's property crosses the Bethel town line approximately 1000 feet further north, but also that the zoning commission imposed a condition requiring Angeloni to erect a sign directing all traffic exiting the riding academy to turn north toward Bethel. See footnotes 4, 5 and 6 of the majority opinion. The defendants' claim that § 8-3h does not apply because the entrance and exit do not border on a Bethel street is without merit. See footnote 7 of the majority opinion.

involved in those cases did not contain the unique provision of § 8-3h that expressly prohibits a hearing unless the prescribed notice is given.

The majority opinion also claims that its conclusion "is bolstered by an examination of the complex factual inquiries that the zoning commission must make within a very brief time period." The burden of compliance imposed on a zoning commission by the statute can readily be circumvented at minimal cost by mailing a notice to each adjoining municipality even remotely involved under the statute. The legislators considered this problem when § 8-3h was enacted and they contemplated that zoning commission clerks would "give the benefit of the doubt whenever there is any question that there may be an impact that would fit the requirements of this bill." 30 H.R. Proc., Pt. 16, 1987 Sess., p. 6032.

I am not ordinarily inclined to attach jurisdictional consequences to procedural flaws that occur in the course of administrative proceedings or appeals therefrom. See *Andrew Ansaldi Co.* v. *Planning & Zoning Commission,* 207 Conn. 67, 75–76, 540 A.2d 59 (1988) (*Shea, J.,* concurring). When, however, the legislature has gone so far as to prohibit a hearing without the notice to an adjoining municipality prescribed by § 8-3h, I believe we have no choice but to implement the statute by invalidating a permit granted as a result of such an illegal hearing. Accordingly, I would sustain the plaintiff's appeal without addressing the other issues.