## JAMES CASERTA *v.* ZONING BOARD OF APPEALS OF THE CITY OF MILFORD ET AL.
### (14134)

PETERS, C. J., SHEA, GLASS, COVELLO and BORDEN, Js.

Argued March 20—decision released June 18, 1991

*Bruce L. Levin,* for the appellant (named defendant).

*Benson A. Snaider,* for the appellees (plaintiff).

BORDEN, J. The dispositive issue in this appeal is whether the defendant, the zoning board of appeals of the city of Milford (board),[1] had subject matter jurisdiction to hear the appeal of the plaintiff, James Caserta, from a revocation by the zoning enforcement officer of a zoning permit previously issued to the plaintiff by that officer. We conclude that it did.

The plaintiff had been issued a zoning permit by the zoning enforcement officer, Peter Crabtree. The permit was subsequently revoked by Crabtree on order of the then chairman of the planning and zoning board, Angelo Marino. The plaintiff appealed that revocation to the board, which denied the appeal and upheld the revocation. The plaintiff appealed the decision of the board to the Superior Court, which sustained his appeal. Upon certification, the board appealed to the Appellate Court, claiming, inter alia, that the trial court had applied an improper scope of review to the board's decision reviewing the zoning enforcement officer's revocation of the permit. The Appellate Court held that the board lacked subject matter jurisdiction to uphold the revocation of the permit, and that it was therefore unnecessary to decide the issue of the board's scope of review. Accordingly, the Appellate Court affirmed the judgment of the trial court. *Caserta* v. *Zoning Board of Appeals,* 23 Conn. App. 232, 580 A.2d 528 (1990).

We granted certification to appeal limited to the following issue: "Was the Appellate Court correct in holding that the zoning board of appeals lacked jurisdiction and that it was unnecessary to decide the board's scope

---

[1] Although the record indicates that the Milford city clerk was also summoned as a defendant, we regard the board as the sole defendant and proceed accordingly.

of review?'' *Caserta* v. *Zoning Board of Appeals,* 216 Conn. 826, 582 A.2d 203 (1990). We now answer this question in the negative and reverse the judgment of the Appellate Court.

Certain facts are undisputed. The plaintiff owns a three-story building located in an "R-5" residential zone in Milford. In such a zone, a rooming house is a permitted special use requiring a special permit and site approval by the planning and zoning board. A seasonal hotel, however, is not a permitted use. On October 30, 1987, the plaintiff filed an application for a zoning permit for the building, describing its present use as a "20 unit seasonal hotel/rooming house . . . ." The plaintiff's application proposed alteration of the building to create twelve units with private baths and no kitchens, "for continued use as [a] rooming house." On the same day, Crabtree, the Milford zoning enforcement officer, approved the application.[2]

On December 24, 1987, Crabtree wrote to the plaintiff informing him that the chairman of the planning and zoning board had instructed Crabtree to revoke the permit, and ordering the plaintiff to "cease and desist all construction until this matter is resolved."[3] In response, the plaintiff filed with the board the appeal that is involved in this case, claiming that the "[z]oning

---

[2] Although Crabtree's only official appointment was that of assistant city planner, the Appellate Court determined that he acted de facto as the city's zoning enforcement officer, and that determination is not before us on this certified appeal. See *Caserta* v. *Zoning Board of Appeals,* 23 Conn. App. 232, 238–41, 580 A.2d 528 (1990).

[3] Crabtree's letter to the plaintiff provided: "Please be advised that I have been instructed by the Planning and Zoning Board Chairman to revoke the zoning permit I issued on October 30, 1987 to you for use as a rooming house pending approval of the construction by the Planning and Zoning Board. You must cease and desist all construction until this matter is resolved." There is no indication in this record that the plaintiff had begun construction in reliance on the permit before it was revoked.

permit to reconstruct room configuration from 20 unit hotel/rooming house to 12 units with baths (no private kitchens) granted 30 October 1987 by Zoning Enforcement Officer . . . was illegally and arbitrarily withdrawn by the Zoning Enforcement Officer . . . on December 24, 1987.''

The board held a hearing on the plaintiff's appeal.[4] One of the issues addressed at the hearing was whether the building was a nonconforming use as a seasonal hotel. The plaintiff introduced a copy of the site plan that he had presented to Crabtree when the zoning permit was issued. He argued that the number of rooms in the building would be reduced to twelve, that parking would be provided, and that the building's nonconformity would be reduced. He claimed that there was no reason for Crabtree to revoke the permit.

Crabtree testified that he had revoked the permit at the request of Marino, who at the time was the chairman of the planning and zoning board. Crabtree testified further that his research in the tax records indicated that the building had been used as a hotel and that ''the building is obviously an old seasonal hotel.'' Crabtree argued that the permit was valid because there would be a decrease in the use of the building, most of the work was to be done on the inside of the building and there would be no change to a multifamily use, ''so that the original use is consistent with what can be seen now.'' Crabtree also testified that in his view there had been no abandonment of any nonconforming use of the building.

---

[4] Since the transcript of the hearing was incomplete, the parties agreed in the trial court that the court could consider the board's minutes of the hearing as the record of the hearing. Our recitation of the evidence adduced at the hearing is limited to that evidence necessary to the determination of this appeal, and is not meant to be a complete summary of all of the evidence presented.

Marino testified that, after consulting with the city attorney, the planning and zoning board felt that the permit had been improperly issued because it involved a change of use from a rooming house and because of a lack of on site parking. Therefore, Marino testified, Crabtree was ordered to revoke the permit.

As the hearing before the board continued, a discussion ensued concerning whether any nonconforming use of the building had been abandoned and whether the fact that the plaintiff did not intend to live in the building invalidated its use as a rooming house. Several persons testified, in opposition to the plaintiff's appeal, that the use of the building as a hotel had been abandoned and that its use as a rooming house would harm the area. In rebuttal, the plaintiff stated that his attempt to renovate the building would improve the area and that "the permit was valid and should not have been revoked without a hearing or any opportunity to be heard . . . ." The board thereafter met to consider the merits of the plaintiff's appeal. After discussion, the board voted to deny the appeal.

The plaintiff appealed to the Superior Court. The trial court determined that the permit had been issued properly and that Crabtree had ruled that there had been no abandonment of a nonconforming use.

The court determined further that (1) it "cannot find that . . . Crabtree's ruling [of no abandonment] could not have been reasonably reached under the circumstances," (2) "[t]he issue before the defendant Board was the propriety of the revocation of the Zoning Permit," and (3) the "permit had been properly approved and the attempted revocation was clearly illegal." Accordingly, the court sustained the plaintiff's appeal.

The board appealed from that judgment to the Appellate Court, claiming, inter alia, that "the trial court (1)

did not utilize the proper standard of review,[5] [and] (2) did not recognize the existence of facts and reasons in the record supporting the board's decision . . . ."[6] *Caserta* v. *Zoning Board of Appeals,* supra, 23 Conn. App. 233. The Appellate Court concluded that "[t]he unusual factual posture of this case makes it unnecessary for us to decide the board's scope of review. The revocation of the permit at the direction of the planning and zoning board was void, and, regardless of its scope of review, the board of appeals was powerless to affirm a void act." Id., 234. The Appellate Court reasoned that the planning and zoning board lacked a veto power over decisions of the zoning enforcement officer because "General Statutes § 8-7 vests the power to review decisions of the zoning enforcement officer in the zoning board of appeals, not the planning and zoning board." Id., 235. Therefore, the court stated, the order of Marino, as chairman of the planning and zoning board, to revoke the permit "usurped the appellate jurisdiction vested by law in the zoning board of appeals, and was, accordingly, void." Id.

The Appellate Court, focusing on the revocation letter and the testimony of Crabtree and Marino providing that Marino had ordered Crabtree to revoke the permit, viewed the administrative record as disclosing "a fatal jurisdictional flaw in the revocation. Thus, the jurisdictional issue was squarely before the board of appeals and should have been its first concern." Id., 236.

---

[5] The gist of this claim is that the trial court improperly focused on whether Crabtree's decision to issue the permit had been supported by sufficient evidence, rather than on whether the de novo decision of the board to reject the plaintiff's appeal had been supported by sufficient evidence.

[6] The board also claimed that the trial court improperly permitted the plaintiff to introduce evidence on appeal and improperly held that Crabtree was the acting zoning enforcement officer. *Caserta* v. *Zoning Board of Appeals,* 23 Conn. App. 232, 233, 580 A.2d 528 (1990). The Appellate Court determined those issues adversely to the board, and they are not within the question we certified for appeal to this court.

The Appellate Court further concluded that "[i]f Crabtree had revoked the permit in the good faith belief that it had been erroneously issued, issued under false pretenses, or violated by subsequent acts of the applicant—in other words, if he had revoked the permit in the good faith discharge of his office—the board of appeals, hearing de novo an appeal from such a revocation, would wield that same authority to remake the decision 'as in its opinion' . . . ought to have been made." Id., 236–37. It was the Appellate Court's view, however, that Crabtree had "used the authority of his office for the invalid purpose of carrying into effect a void and illegal decision of the planning and zoning board"; id., 237; and that as such, his action was outside his scope of authority, rendering the zoning board of appeals without authority to affirm that action. Id. The Appellate Court, therefore, affirmed the judgment of the trial court sustaining the plaintiff's appeal from the decision of the board. This appeal followed.

The board claims that the Appellate Court improperly concluded that (1) the board lacked jurisdiction to hear the plaintiff's appeal, and (2) it was unnecessary, therefore, to decide whether the trial court applied an improper scope of review to the board's decision. We agree.

" 'Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong.' " *LeConche* v. *Elligers,* 215 Conn. 701, 709, 579 A.2d 1 (1990), quoting *Shea* v. *First Federal Savings & Loan Assn. of New Haven,* 184 Conn. 285, 288, 439 A.2d 997 (1981). The same principle applies to administrative agencies; *Castro* v. *Viera,* 207 Conn. 420, 428, 541 A.2d 1216 (1988); including zoning authorities. *Langer* v. *Planning & Zoning Commission,* 163 Conn. 453, 458, 313 A.2d 44 (1972). "Once [a] board of appeals is provided for in

the zoning ordinance, its powers stem directly from the statute . . . and its powers are not subject to restriction by provisions contained in the ordinance or amendments thereto." (Citations omitted.) Id.

Section 9.2.1 of the Milford zoning regulations vests in the board the power "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decisions made by the Zoning Enforcement Officer . . . ." This language tracks that of General Statutes § 8-6, which provides in pertinent part that "[t]he zoning board of appeals shall have the following powers and duties: (1) To hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ."

There is no question that the revocation of the permit and the cease and desist order by Crabtree was an "order" within the scope of General Statutes § 8-6 and § 9.2.1 of the zoning regulations and that the proceedings before the board constituted an appeal from that order. Indeed, as the board points out, it was the plaintiff who invoked the jurisdiction of the board by filing his appeal from that order. The question, therefore, is whether this record supports the determination of the Appellate Court that there was a fatal jurisdictional flaw in the proceedings before the board. We conclude that the record does not support that determination.

The crux of the Appellate Court's decision was its determination that Crabtree had not acted "in the good faith discharge of his office" in revoking the permit. *Caserta* v. *Zoning Board of Appeals,* supra, 23 Conn. App. 237. If he had so acted—"if he had revoked the permit in the good faith belief that it had been errone-

ously issued"—the board would have had the "same authority to remake the decision 'as in its opinion' it ought to have been made. General Statutes § 8-7."[7] Id., 236–37.

---

[7] General Statutes (Rev. to 1987) § 8-7, as amended by Public Acts 1987, No. 87-215, §§ 4, 7, provides: "APPEALS TO BOARD. HEARINGS. EFFECTIVE DATE OF EXCEPTIONS OR VARIANCES; FILING REQUIREMENTS. The concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or decision of the official charged with the enforcement of the zoning regulations or to decide in favor of the applicant any matter upon which it is required to pass under any bylaw, ordinance, rule or regulation or to vary the application of the zoning board of appeals, by any person aggrieved or by any officer, department, board or bureau of any municipality aggrieved and shall be taken within such time as is prescribed by a rule adopted by said board, or, if no such rule is adopted by the board, within thirty days, by filing with the zoning commission or the officer from whom the appeal has been taken and with said board a notice of appeal specifying the grounds thereof. The officer from whom the appeal has been taken shall forthwith transmit to said board all the papers constituting the record upon which the action appealed from was taken. An appeal shall not stay any such order, requirement or decision which prohibits further construction or expansion of a use in violation of such zoning regulations except to such extent that the board grants a stay thereof. An appeal from any other order, requirement or decision shall stay all proceedings in the action appealed from unless the zoning commission or the officer from whom the appeal has been taken certifies to the zoning board of appeals after the notice of appeal has been filed that by reason of facts stated in the certificate a stay would cause imminent peril to life or property, in which case proceedings shall not be stayed, except by a restraining order which may be granted by a court of record on application, on notice to the zoning commission or the officer from whom the appeal has been taken and on due cause shown. Such board shall, within the period of time permitted under section 8-7d, hear such appeal and give due notice thereof to the parties. Notice of the time and place of such hearing shall be published in a newspaper having a substantial circulation in such municipality at least twice at intervals of not less than two days, the first not more than fifteen days, nor less than ten days, and the last not less than two days before such hearing. In addition to such notice, such board may, by regulation, provide for notice by mail to persons who are owners of land which is adjacent to the land which is the subject of the hearing. At such hearing any party may appear in person and may be represented by agent or by attorney. Such board may reverse or affirm wholly or partly or may modify any order, requirement or decision appealed from and shall make such order, requirement or decision as in its opinion should be made in the

Good faith is a subjective concept that implicates the sincerity of the motives animating the person involved. See *Kendzierski* v. *Goodson,* 21 Conn. App. 424, 429–30, 574 A.2d 249 (1990). Thus, the Appellate Court viewed the board's jurisdiction as having been defeated by an improper motive of Crabtree in issuing the revocation, namely, "us[ing] the authority of his office for the invalid purpose of carrying into effect a void and illegal decision of the planning and zoning board . . . ." *Caserta* v. *Zoning Board of Appeals,* supra, 23 Conn. App. 237. We conclude, however, that this purported improper motive was insufficient to defeat what was otherwise manifestly valid jurisdiction in the board to hear the plaintiff's appeal.

First, there is nothing in the zoning statutes defining the jurisdiction of zoning boards of appeals to suggest that the motives of the zoning enforcement officer whose decision is the subject of an appeal affect the board's jurisdiction. See General Statutes §§ 8-5 through 8-7e; see also *Labor Board* v. *I. & M. Electric Co.,* 318

premises and shall have all the powers of the officer from whom the appeal has been taken but only in accordance with the provisions of this section. Whenever a zoning board of appeals grants or denies any special exception or variance in the zoning regulations applicable to any property or sustains or reverses wholly or partly any order, requirement or decision appealed from, it shall state upon its records the reason for its decision and the zoning bylaw, ordinance or regulation which is varied in its application or to which an exception is granted and, when a variance is granted, describe specifically the exceptional difficulty or unusual hardship on which its decision is based. Notice of the decision of the board shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person who appeals to the board, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. Such exception or variance shall become effective upon the filing of a copy thereof (1) in the office of the town, city or borough clerk, as the case may be, but, in the case of a district, in the offices of both the district clerk and the town clerk of the town in which such district is located and (2) in the land records of the town in which the affected premises are located, in accordance with the provisions of section 8-3d."

U.S. 9, 18, 63 S. Ct. 394, 87 L. Ed. 579 (1943) (when National Labor Relations Board complaint issues, only question is truth of its accusation; motives or bad faith of informer cannot deprive board of jurisdiction). Nor does the plaintiff offer any statutory justification for such an analysis.

Furthermore, in the area of judicial subject matter jurisdiction we have counseled "that the court should indulge every presumption in favor of subject matter jurisdiction." *LeConche* v. *Elligers,* supra, 714; see also *Gurliacci* v. *Mayer,* 218 Conn. 531, 542–43, 590 A.2d 914 (1991). We see no reason on the record of this case to deprive a zoning board of appeals of the same presumption. That presumption is particularly apt here because zoning agencies ordinarily conduct their proceedings with some degree of informality. *Saporiti* v. *Zoning Board of Appeals,* 137 Conn. 478, 482, 78 A.2d 741 (1951). It would be inconsistent with that informality to require a zoning board of appeals to determine its subject matter jurisdiction on the basis of an evaluation of the motives of the zoning officer whose actions are before it by way of an appeal.

Finally, we disagree with the Appellate Court's analysis as a matter of policy. The result of that analysis would be that, if Crabtree were incorrect on the merits of the propriety of the permit, and the board, Marino and the other witnesses were correct on those merits, the plaintiff nevertheless would retain a permit to which he was not entitled solely because of purportedly improper reasons that prompted Crabtree properly to revoke the permit. That does not strike us as rational land use planning procedure.

We conclude, therefore, that the question of whether the planning and zoning board, or Marino as its chairman, had the authority to order Crabtree to revoke the permit was irrelevant to the board's subject matter

jurisdiction over the plaintiff's appeal from that revocation. The issue before the board was whether the plaintiff was entitled to the permit,[8] not whether Crabtree had acted with improper motives in revoking it. The Appellate Court improperly injected a subject matter jurisdiction analysis that was not pertinent to the case.

The judgment of the Appellate Court is reversed and the case is remanded to that court for determination of whether the trial court applied a proper scope of review to the decision of the board.

In this opinion the other justices concurred.

---

[8] Indeed, this administrative record bears out that the plaintiff perceived that to be the issue before the board. His argument to the board was that the permit was validly issued in the first instance and that the revocation was invalid for that reason, and not because of any jurisdictional flaws in the procedure. It was not until his rebuttal that he sought to raise procedural claims based, not on Crabtree's motives, but on the lack of notice and an opportunity to be heard before the revocation issued.