[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This Court originally heard this case as an appeal from the action of the defendant Board denying an appeal from the decision of the Zoning Enforcement Officer to revoke a zoning permit previously issued by him to the plaintiff to make certain changes in a building owned by the plaintiff on Waterbury Avenue in Milford. On September 18, 1989 this Court ruled that the action of the defendant Board denying the appeal and upholding the revocation was illegal, arbitrary and in abuse of its discretion and sustained the appeal. Thereafter, the case wound its way on appeal to the Appellate and to the Supreme Courts.
In a decision of the Supreme Court released June 22, 1993, and reported in 226 Conn. 80, that court ordered the Appellate Court to remand the matter to this court "with direction to reverse the judgment sustaining the plaintiff's appeal and for further proceedings in accord with this opinion."
The remand of the Appellate Court is dated July 22, 1993 and states that "Pursuant to and in conformity with that remand, this case is remanded to your court for further proceedings not inconsistent with the decision of the Supreme Court."
Thereafter, the parties filed their briefs dated December 1, 1993 in this Court.
This Court, therefore, reverses its judgment dated September 18, 1989, sustaining the plaintiff's appeal to it and starts its further proceedings from the bringing of the actions that resulted CT Page 2853 in the original appeal to it.
The file discloses that on October 30, 1987, the plaintiff, whose address was 1009 Redding Road in Fairfield, Connecticut applied to the Zoning Enforcement Officer of Milford for a Zoning Permit concerning property at Waterbury Avenue. The application stated that the present use of the property was "20 unit Seasonal Hotel/Rooming House". The plaintiff proposed an alteration of the construction as follows: "1st floor, 5 units, 2nd floor 4 units, 3rd floor 3 units. All units have private bath, no kitchens. For continued use as rooming house, non conforming parking". The application also stated "No exterior modification or additions except removal of portions of 2 story porch 8' x 21 with replacement steps. Reconstruct exterior Fire Escape (unenclosed) 4 x 17' at 2nd floor center balanced stair to 1st floor level" This proposed use was significantly less than the prior use of the building of 20 rooms.
That same day the application for the zoning permit was approved by Peter W. Crabtree, the Zoning Enforcement Officer.
On December 24, 1987, Peter Crabtree wrote the plaintiff.
 "James Caserta 1009 Redding Road Fairfield, Connecticut 06430
Re: 2 Waterbury Avenue
Dear Mr. Caserta:
 Please be advised that I have been instructed by the Planning Zoning Board Chairman to revoke the zoning permit I issued on October 30, 1987 to you for use as a rooming house pending approval of the construction by the Planning Zoning Board.
 You must cease and desist all construction until this matter is resolved.
Very truly yours,
 PETER W. CRABTREE Asst. City Planner" CT Page 2854
Then on March 8, 1982 the defendant Board held a hearing on "Request in accordance with Sec. 9.2.1 to appeal the decision of the Zoning Enforcement Officer to revoke Zoning Permit for modifications to rooming house."
The plaintiff's attorney, Peter Crabtree, the plaintiff, Angelo Marino, past Chairman of the Planning Zoning Board, Kevin Moran, present Chairman of the Planning Zoning Board all spoke on the matter.
Six members of the public spoke in opposition as follows:
 "OPPOSITION: Barbara Cappetto, 126 Shorefront, stated that Mr. Mrs. Urso owned the hotel for many years until Mr. Urso became ill in the 1970's and then the building was boarded up and there was never anyone in the building since 1984. Mrs. Cappetto stated that someone lives above a 2-story garage and stated there is no room for any cars on the site. Mrs. Cappetto stated this non-conforming use has been abandoned and should not be allowed to start up again.
 OPPOSITION: Jim Coffey, 102 Shorefront, stated the hotel was used on a seasonal basis until it was closed for safety code violations. Mr. Coffey stated the business of being a hotel was also abandoned and stated this use will over-tax the public services.
 OPPOSITION: Ken Stephens, 1 Ann Street, stated that a rooming house will not improve the area and noted the problem with parking.
 OPPOSITION: Alma Davis, 160 Broadway, stated there is a problem with absentee landlords in the area and the rooming house will add to this problem.
 OPPOSITION: Irene Smith, 144 Broadway, stated this is a residential area and a rooming house is not the best use for this area.
 OPPOSITION: Mabel Stevens, 1 Ann Street, stated the house was only used in the summer and never have 19 people lived there. Mrs. Stevens stated that last summer four families lived in the garage and caused destruction and other problems in the neighborhood." CT Page 2855
The plaintiff's attorney finally spoke in affirmative rebuttal.
On April 12, 1988 the defendant Board took up the plaintiff's appeal at its business meeting. After discussion it voted 5-0 to deny the plaintiff's appeal and to uphold the revocation of the permit. Thereafter, the Chairman of the defendant Board wrote the following letter to the plaintiff's attorney.
"RE: 2 WATERBURY AVENUE
 At its meeting held on April 12, 1988, the Zoning Board of Appeals voted to deny the appeal of the decision of the Zoning Enforcement Officer, thereby upholding the revocation of the permit.
 It was felt the permit was improperly issued and there was no evidence of reliance on the permit or work begun to establish vested rights, therefore, no rights were denied in the process of revocation. It was noted there was no attempt to remedy violations during this period of discontinuance of use and this evidences abandonment, and noted there is authority to provide for abandonment of nonconforming use when there is presumption of intent to abandon.
 Appeals to this ruling must be filed with the proper judicial court of law within fifteen days of the publication of the legal advertisement. Said legal notice to be published in the MILFORD CITIZEN."
The defendant Board first claimed that "the permit was improperly issued." In the discussion by the defendant Board before its voted, Mr. Anderson, a member of the defendant Board stated:
 "Then, that leaves the question was the revocation itself illegal, arbitrary or in abuse of discretion; and one answer to that is that it was not because the permit was issued by someone who did not have authority originally to issue it. The permit was issued CT Page 2856 by Peter Crabtree, who is not the Zoning Enforcement Officer; and under Section 8.5, you have to have the Zoning Permit issued by a Zoning Enforcement Officer. Therefore, if it was improperly issued by someone without authority, then there's authority to revoke that improperly issued Zoning Permit."
In a footnote to its decision on page 84 of 220 Conn., the Supreme Court stated:
 "The board also claimed that the trial court had improperly admitted evidence and had improperly determined that Crabtree was the zoning enforcement officer of Milford. These issues have been determined adversely to the board, and are no longer part of this case. Caserta v. Zoning Board of Appeals, 219 Conn. 352, 357 n. 5, 593 A.2d 118 (1991)."
The defendant Board also stated in its letter of April 22, 1988 to the plaintiff's attorney that there was no evidence of reliance on the permit or work begun to establish vested rights, therefore no rights were denied in the process of revocation. The Court agrees there was no evidence of work begun or reliance on the permit before it was revoked.
The Court also agrees that there was evidence of abandonment.
The Court disagrees with the effect of the final statement "there is authority to provide abandonment of non-conforming use when there is presumption of intent to abandon."
The latter statement is based on Sec. 2.7 of the 1987 Zoning Regulations of Milford. This section reads in full:
 Abandonment. Any non-conforming use which has been abandoned shall not thereafter be reestablished. Any structure or land, or structure and land in combination which was formerly devoted to a non-conforming use which has been abandoned, shall not again be devoted to any use other than those uses which are allowable in the Zoning District in which it is located. CT Page 2857
 2.7.1 The term abandonment, as used herein, shall mean the voluntary discontinuance of a use, when accompanied by an intent no to reestablish such use. Any one of the following shall constitute prima facie evidence of intent to abandon:
 (1) Any failure to take all necessary steps to resume the non-conforming use with reasonable dispatch in the circumstances, including advertising of the property for sale or for lease; OR
 (2) In the case of a non-conforming use of a structure or of a structure and land in combination, discontinuance of the nonconforming use for 6 consecutive months, or for a total of 18 months during any three year period; OR
 (3) In the case of land only, discontinuance of the non-conforming use for 30 consecutive days, or for a total of 3 months during a one-year period."
The first significant part of the above regulation concerns "the voluntary discontinuance of a use". There is no doubt there was such a discontinuance in this case. The former hotel structure was not used for a time estimated by the witnesses as follows: Kevin Norman, Chairman of the Planning Zoning Board, "6 or 7 years". Ms. Barbara Cappetto, "there was never anyone in the building since 1984".
The Court believes that from the evidence before it, the defendant Board could reasonably find that there was a voluntary discontinuance of the use of the structure in question for a number of years. That decision, however does not end the matter. The Zoning Ordinance also requires that the discontinuance of use be "accompanied by an intent not to re-establish such use." The court finds that there was no intent by the plaintiff ever to "not reestablish such use."
The ownership of the structure by the plaintiff with no one using it by living in it for a short or a long time would be very expensive for the plaintiff. He would have to pay taxes to the City CT Page 2858 of Milford on the buildings, would have to protect his investment in them by covering them with fire insurance, and public liability insurance and by making any necessary repairs to it. Such a financial burden could be stopped almost overnight by demolishing the buildings. He did not do that.
In addition he prepared plans showing the change of use of the structure from 20 living units, to 12 such units. He employed the services of an attorney to present his application to the defendant. When he was turned down by the defendant Board, he persisted in his claim for the past 4 years through the court system. Caserta v. Zoning Board of Appeals, 23 Conn. App. 232
(1990); Caserta v. Zoning Board of Appeals, 219 Conn. 352 (1991); Caserta v. Zoning Board of Appeals, 28 Conn. App. 256 (1992); Caserta v. Zoning Board of Appeals, 226 Conn. 80 (1993).
This requires this Court to find as a fact that the plaintiff intended to reestablish the former use of the property and had no intent not to do so. Thus, the two requirements of Sec. 2.7 of the Zoning Regulations of Milford — voluntary discontinuance of a use and intent not to reestablish the use — are not met. Hence, the defendant Board's ruling that the plaintiff had an "intent to abandon" use of the property is erroneous.
The defendant's vote to deny the appeal of the decision of the Zoning Enforcement officer was arbitrary, illegal and in abuse of its discretion.
The court finds that the October 30, 1989 application of the plaintiff for a Zoning Permit as originally approved by the Zoning Enforcement officer is valid and in effect and that the plaintiff may proceed with his plans concerning the structure.
THOMAS J. O'SULLIVAN, TRIAL REFEREE