[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Johnna L. Howard and Nancy Santacroce (hereinafter "plaintiffs") have appealed from a decision of the City Council of the City of Norwich, that City's zoning authority (hereinafter "City Council"), allowing an amendment to Section 15.1.4 of the Norwich Zoning Ordinance (hereinafter "Code") regarding parking requirements for retail stores. The effort to amend the Code was initiated by the defendant S.M.M. Associates (hereinafter "S.M.M.") a Massachusetts corporation seeking to develop a proposed Super Stop Shop on property in Norwich (hereinafter "Property") owned by the defendants Joseph Goldberg, et al Trustees (hereinafter "Goldberg").
The City Council and S.M.M. have since been defaulted for failure to plead, and although the City Council filed an answer subsequent to the default, the record reflects no action having been undertaken to vacate that default judgment. Nevertheless, at oral argument, it was represented by the parties that the attorney for the City Council was aware of the proceedings, had reviewed the briefs and was content to rest on the arguments to be made by the defendant Goldberg.
The relevant factual background can be summarized as follows: In 1992, S.M.M., seeking to develop a Super Stop Shop on the property owned by Goldberg, sought a variance from the Zoning Board of Appeals from Section 15.1.4 of the Code to reduce the number of required parking spaces for the proposed Super Stop Shop from 490 to 388. The site development plan submitted, however, failed to depict the building's 7,000 square foot CT Page 5713 mezzanine level, which would have required additional parking spaces under the Code. Thus, although the Zoning Board of Appeals granted the variance, it had not considered the parking requirements necessitated by this additional square footage. The plan as actually proposed was therefore not in compliance with the Code.
In an effort to remedy this problem, S.M.M. and Goldberg proposed an amendment to Section 15.1.4 of the Code, which then required parking as follows:
 For retail stores and service shops, exclusive of furniture stores containing a minimum of (20,000) square feet (1) parking. space for each (150) square feet of gross first floor area exclusive of basement storage plus (1) space for each 300 square feet above the first floor.
The proposed amendment was ostensibly "to clarify that no parking spaces are required for storage areas, mechanical rooms and non-sales areas less than a specified size above the first floor, in retail stores and service shops." A public hearing was held, following which the City Council adopted the amendment, with some changes. The text of the section, as amended, reads:
 15.1.4 For retail stores and service shops, exclusive of furniture stores containing a minimum of twenty thousand (20,000) square feet, the following:
 a. One (1) parking space for each one hundred and fifty (150) square feet of gross first floor area, exclusive of basement storage; plus
 b. One (1) parking space for each three hundred (300) square feet above the first floor; except that, no parking spaces for areas above the first floor shall be required for storage and mechanical rooms, or for non-sales areas which combined are less than four (4%) percent of the total gross floor area of all floors." (Emphasis added).
Pursuant to Connecticut General Statutes § 8-3b, the Reference Committee of the Southeastern Connecticut Regional Planning Agency ("SCRPA") had reviewed the proposed amendment and CT Page 5714 raised concerns about the potential ambiguity of the phrase "non-sales areas" and the impact of the amendment on Section 15.9 of the Code relating to "mixed uses"
The Commission on the City Plan of the City of Norwich ("Commission") had also reviewed the proposal and had approved it. At the July 20, 1992 public hearing on that amendment, the City Planner advocated neither for nor against the amendment but answered several questions about it in a manner that appeared generally supportive. In response to SCRPA's concerns, the Council added the word "combined", absent from the amendment as originally proposed, to Section 15.1.4.b. There was no expert testimony presented to the City Council which, after a fair amount of discussion and debate, approved the application unanimously, publishing notice of its decision on July 22, 1992.
I. Aggrievement
In a Memorandum of Decision re: Motion to Dismiss filed on November 17, 1992, the court, Teller, J., found that "the plaintiffs have met their burden of showing that the land is affected by the decision of the City Council and, therefore, the plaintiffs are statutorily aggrieved by the decision." At oral argument, the parties agreed that this finding by Judge Teller is the law of the case and that the plaintiffs have established statutory aggrievement in accordance with Connecticut General Statutes Sec. 8-8 (1).
II. Claim of Lack of Jurisdiction Based on Non-Compliance withConnecticut General Statutes Sec[.] 8-7 (c)
The plaintiffs claim that the court lacks jurisdiction to hear this appeal because the application for the proposed amendment did not disclose the name of the beneficiary of the trust or other equitable owners of the property and because although the application indicated that there were trustees in addition to Joseph Goldberg[1], their names were not disclosed. The plaintiffs assert that the defendants therefore failed to comply with C.G.S. Sec. 8-7 (c), which provides:
 Any person who makes an application to a planning commission, zoning commission or zoning board of appeals pertaining to real property, the record title to which is held by a trustee of an undisclosed trust, shall file with said application a sworn statement disclosing the CT Page 5715 name of the equitable owner of such real property or the beneficiary of the trust.
A threshold question, not raised by the parties, is whether the application for the amendment is an "application . . . pertaining to real property, the record title to which is held by a trustee of an undisclosed trust" within the meaning of the statute. The application sought a change in the existing zoning laws applicable to all retail and services stores (other than furniture stores) of a certain size. However, unlike an application for a variance or a subdivision, for example, it did not specifically address the property owned by the trust.
"The primary rule of statutory construction is that `[i]f the language of the statute is clear, it is assumed that the words themselves express the intent of the legislature; Houston v.Warden, 169 Conn. 247, 251, 363 A.2d 121 (1975); Hurlbut v.Lemelin, 155 Conn. 68, 73, 230 A.2d 36 (1967); and thus there is no need to construe the statute. Bell v. Planning and ZoningCommission, 173 Conn. 223, 226, 377 A.2d 299 (1977); Houston v.Warden, supra 251; Hartford Hospital v. Hartford, 160 Conn. 370,375-76, 279 A.2d 561 (1971).'" State v. Smith, 194 Conn. 213, 221
(1988), quoting Anderson v. Ludgin, 175 Conn. 545, 552,400 A.2d 712 (1978).
"The words of [a] statute are to be given their commonly approved meaning, unless a contrary intent is clearly expressed.Holmquist v. Manson, 168 Conn. 389, 393, 362 A.2d 971 (1975);State v. Antrum, 185 Conn. 118, 122, 440 A.2d 839 (1981); General Statutes § 1.1." State v. Kish, 186 Conn. 757, 764,443 A.2d 1274 (1982). Applying this analysis to Section 8-7c, although the statute's terms appear to apply only to applications pertaining to real property owned by the applicant as a trustee, it is apparent that, given the purpose of the statute, the legislature intended a somewhat broader meaning.
"When the language of a statute is unclear, we may ascertain the intent of the legislature by looking beyond the language to the statute's legislative history and the purpose that the statute was intended to serve." Weinberg v. ARA Vending Co.,223 Conn. 336, 340-41, 612 A.2d 1203 (1992). Mingachos v. CBS, Inc.,196 Conn. 91, 104, 49 A.2d 368 (1985). The purpose of Sec. 8-7c
is to assure that the identities of beneficial owners of the property are known to the commission in order to avoid hidden conflicts of interests with commission members and to disclose to CT Page 5716 the commission, to the municipality as a whole and to consumers "just who's involved in subdividing the land and selling it" See Testimony of Representatives Miller, Guidera and Sherer, 14 H.R. Proc. Pt. 8, 1971 Sess. pp. 3666-3669. See also, Fund forAnimals, Inc. v. Town Planning and Zoning Commission of the Townof Glastonbury, et al, Judicial District of Hartford/New Britain at Hartford, No. CV-91-0396816-S, (February 1, 1993), Norko, J. Given these purposes, the difference between whether the application directly pertains to a particular property, or whether that property is merely one that would be affected by the application if granted is not critical. Under either scenario, commission members ought to be be alerted to any potential conflict of interest and to the identity of the true owners. In the case of property held by a trustee of an undisclosed trust, disclosure of the equitable owner or the beneficiary of the trust satisfies the purposes of the statute. Thus, the answer to this unasked question is that the statute does apply even to an application that does not directly implicate a particular property.
The next question is whether or not the trust in this case was "undisclosed" within the meaning of the statute. Goldberg, by signing the application as "Trustee", certainly indicated that a trust was involved, but he did not specify the beneficial owners.
The plaintiffs have cited Tina Sklar, Trustee v. Zoning Boardof Appeals, Town of East Hampton, 3 Conn. Super. Rpts. 347 (1988) in support of their contention that the defendants did not comply with Section 8-7c and that non-compliance is a jurisdictional defect. This is the only reported case to so hold. In that case, the court, O'Connell, J., concluded that the required disclosure of the beneficial owner was "the essence of of the thing to be accomplished" and that the language of the statute was therefore mandatory. As discussed more fully, infra, this court disagrees with that conclusion. Assuming, arguendo,
that Sklar was correctly decided, however, however, that case is factually distinguishable from this one. The primary distinction, for purposes of considering whether the trust in this case was "undisclosed", is that in Sklar, the plaintiff filed her application to the zoning board in the name of "Tina Sklar" with no reference to her status as trustee. It was only in her revised appeal to the Superior Court that she first disclosed the existence of a trust. In this case, the defendants Goldberg et al have throughout this matter proceeded in their position as trustees. Although neither the additional trustees nor the CT Page 5717 beneficial owners of the property were formally disclosed, the fact of the trust was. Moreover, although the application did not specifically indicate the beneficial owners, at oral argument the plaintiffs did not seriously dispute the defendants' assertion that the facts that the defendants Goldberg were not only trustees but also the sole beneficial owners of the subject premises was a matter of public record and a fact well known to the Council members. See, Fund for Animals, Inc. v. TownPlanning and Zoning Commission of the Town of Glastonbury, etal, supra. This court therefore finds that the trust in this case was not "undisclosed" within the meaning of the statute.
Although this conclusion is dispositive of the plaintiffs' Section 8-7c claim, it is worth mentioning that, even assuming that the Goldberg trust was "undisclosed" within the meaning of the statute, the failure to provide the sworn statement required by the statute would not have been a fatal jurisdictional defect. Whether such a defect would have been fatal turns on whether the statute's use of the word "shall" makes this requirement mandatory.
In Lauer v. Zoning Commission., 220 Conn. 455 (1991), our Supreme Court considered a similar challenge concerning Connecticut General Statutes Sec. 8-3 (h). In doing so, it reviewed some fundamental rules of statutory construction pertinent to the resolution of issues such as this:
 "We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. State v. Kozlowski, 199 Conn. 667, 673, 509 A.2d 20
(1986); Hayes v. Smith, 194 Conn. 52, 57, 480 A.2d 425
(1984). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. Dart Bogue Co. v. Slosberg, 202 Conn. 566, 572, 522 A.2d 763 (1987) . . . ." Texaco Refining Marketing Co. v. Commissioner, 202 Conn. 583, 589, 522 A.2d 771 (1987). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong. CT Page 5718 LeConche v. Elligers, 215 Conn. 701, 709, 579 A.2d 1
(1990), quoting Shea v. First Federal Savings Loan Assn. of New Haven, 184 Conn. 285, 288, 439 A.2d 997
(1981). The same principle applies to administrative agencies; Castro v. Viera, 207 Conn. 420, 428, 541 A.2d 1216 (1988); including zoning authorities. Langer v. Planning Zoning Commission, 163 Conn. 453, 458, 313 A.2d 44 (1972)." (Internal quotation marks omitted.) Caserta v. Zoning Board of Appeals, 219 Conn. 352, 358, 593 A.2d 118 (1991). Lauer v. Zoning Commission, supra, 220 Conn. 459-460.
The general rule of statutory construction is that "shall" connotes a mandatory duty as contrasted with "may," which implies permissive action. Caulkins v. Petrillo, 200 Conn. 713, 717,513 A.2d 43 (1986). Connecticut courts, however, have been willing to "look through the literal meaning of words and forms of procedure to the essential purposes to be served." (Internal quotation marks omitted.) Tramontano v. Dilieto, 192 Conn. 426,433, 472 A.2d 768 (1984), quoting Connors v. New Haven, 101 Conn. 191,198, 125 A. 375 (1924).
Whether the word "shall" is mandatory or precatory depends upon its context. See, e.g., Smith v. Zoning Board of Appeals,227 Conn. 71, 92 (1993); Caron v. Inland Wetlands WatercoursesCommission, 222 Conn. 269, 273, 610 A.2d 584 (1992). The legislature's use of the word "shall" does not in and of itself create a mandatory duty to perform an action. Yanni v. DelPonte,31 Conn. App. 350 (1993). Statutes are viewed as a whole in order to ascertain the legislative intent. Ruotolo v. Inland WetlandsAgency, 18 Conn. App. 440, 448, 558 A.2d 1021, cert. denied,212 Conn. 806, 563 A.2d 1356 (1989). The test for determining whether a statutory requirement is mandatory or directory is whether the prescribed mode of action relates to a matter of substance or convenience. Hall Manor Owner's Assn. v. WestHaven, 212 Conn. 147, 152-3, 561 A.2d 1373 (1989). Caron v.Inland Wetlands Watercourses Commission, supra. "Provisions relating to matters of substance are mandatory, whereas provisions designed to secure order, system, and dispatch in the proceedings [are] generally held to be directory, especially when the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) Caron v.Inland Wetlands Watercourses Commission, supra, 66-67. A statutory provision of convenience is mandatory when that provision is accompanied by language that expressly invalidates CT Page 5719 an action taken after non-compliance with it. Brown v.Smarrelli, 29 Conn. App. 660, 664, 617 A.2d 905 (1992), cert. denied, 225 Conn. 901, ___ A.2d ___ (1993); Ruotolo v. Inland WetlandsAgency, supra.
The statute here contains no penalty for non-compliance, nor does it have any other language that would invalidate an action based on a failure to comply and that would therefore tend to render the word "shall" mandatory. The statute appears, based on the legislative history previously discussed, designed to secure order, system and dispatch in the proceedings. Its purposes are to assure that potential conflicts of interest are promptly raised so that they maybe addressed and so that the relevant agencies and the public are alerted to the fact that the person or entity purporting to act with respect to certain property may not in fact be the beneficial owner. Thus, the disclosure requirement contained in Section 8-7c is not the essence of the thing to be accomplished, but rather a vehicle for helping to assure a proceeding free of conflicts of interest. This court concludes, therefore, that Section 8-7c is directory, not mandatory, and that a failure to meet its requirements is not a jurisdictional defect. See, Ghent v. Planning Commission,219 Conn. 511, 520 (1991).
III. Claim that the City Council Acted Illegally, Arbitrarilyand in Abuse of Its Discretion In Approving the Amendment.
A concise summary of the scope of judicial review of a decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations may be found in Protect Hamden/North Haven from Excessive Traffic Pollution,Inc. v. Planning Zoning Commission, 220 Conn. 527 (1992):
 "[T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the CT Page 5720 decision reached. . . . Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . Zoning must be sufficiently flexible to meet the demands of increased population and evolutionary charges in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the commission is twofold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, . . . . and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2. . . .
 ". . . Where a zoning agency has stated its reasons for its actions, the court should determine only whether the assigned grounds are reasonably supported by the record and whether they are pertinent to the considerations which the authority was required to apply under the zoning regulations. . . . The zone change must be sustained if even one of the stated reasons is sufficient to support it. . . The principle that a court should confine its review to the reasons given by a zoning agency does not apply to any utterances, however incomplete, by the members of the agency rendered a formal, official, collective statement of reasons for its action. . . . (where zoning agency has CT Page 5721 "formally stated: that reasons for its decisions, court should not go behind such official collective statement to search records for other reasons supporting the decision).
 . . . "the failure of the zoning agency to give such reasons requires the court to search the entire record to find a basis for the commission's decision. . . Thus, the amendments must be sustained if the record supports a determination that they (1) conform to the Hamden comprehensive plan, and (2) are reasonably related to the police powers enumerated in § 8-2 . . . . (citations omitted; footnotes omitted; internal quotation marks omitted.) Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, 220 Conn. 527, 542-545.
The plaintiffs, in attempting to impress the court with their claim that the Council's decision was arbitrary and unreasonable, overstate the concerns raised in the SCRPA letter. The "serious question" in that letter related to a different amendment altogether, and the more general issues raised by that agency concerning the defendants' proposed amendment were discussed and addressed by the Council.
The record makes clear that the purported intention of the amendment was to clarify the parking requirements in cases where there are non-sales areas on the second floor of a retail store. The plaintiffs claim that the amendment is more than mere "clarification"[2] and is, rather, a substantive change in those requirements. Whether clarification or change, however, there is nothing per se unreasonable about amending the parking requirements if there are good reasons for doing so. Although at the outset of the hearing there were indications that some members of the Council did not perceive a need for a clarification, the questions raised by Council members, as well as their vote, indicated that by the end of their discussion, they understood the reasons behind the amendment.
That there was never a need for such a clarification in the past in no way undermines the Council's decision to respond to changing times when it did and to amend the Code to reflect contemporary situations. Tempora mutantur, et leges mutantur inillis. See also, DeMeo v. Zoning Commission, 148 Conn. 68
CT Page 5722 (1961).
The plaintiffs' major complaint appears to be that the 4% figure contained in the amendment is "arbitrary" and that the amendment itself is therefore invalid. It is certainly true that the record fails to establish any scientific basis for arriving at this particular figure. Unlike the situation in Primerica v.Planning and Zoning Commission, 211 Conn. 85 (1989), cited by plaintiffs, however, the record is not devoid of a basis for concluding that an alteration in the parking requirements was appropriate. It is readily apparent from a review of the transcript of the hearing that the Council understood, after some discussion, that it was not necessary to provide the same parking requirements for square footage that was being utilized for purposes that would not necessitate additional parking. Nor does it require expert testimony to establish that removal of unnecessary requirements is an appropriate legislative function. Whether 4% is the ideal figure is not a matter for this court to determine, and the fact that the figure was not arrived at on the basis of a more detailed analysis is not sufficient to undermine it if it reflects a reasonable decision in light of the purposes sought to be accomplished.
In addition to their contention that the Council lacked testimony or reports to support the amendment, the plaintiffs also claim that the Council failed to consider the interests of the public and of neighborhood residents in particular. The record, however, demonstrates that a public hearing was duly noticed and that anyone who wished to be heard had the opportunity to do so. Several Council members raised concerns and had them addressed. No one spoke in opposition to the proposed amendment. This claim is without merit.
Finally, the plaintiffs claim that the amendment was illegal in that it was designed to further the interests of the defendants and not of the general public. The record, however, makes clear that counsel for the proponents of the amendment specifically avoided any discussion of the impact of the amendment on the defendants. That the defendants had their own interests in mind when they drafted the proposal is quite likely, but it was very clearly presented to the Council as a change that would affect all stores similarly situated, and their attorney would not permit herself to be drawn into a discussion of how the amendment would impact her client. CT Page 5723
Although it is true that the most immediate beneficiary of the amendment is likely to be its proponent, this is not a case of a zone change directed at a specific piece of property. The amendment, on its face, affects all retail establishments of a certain size, and the mere fact that the proponent of the amendment is likely to benefit from the change does not render the amendment invalid. DeMeo v. Zoning Commission, supra.
IV. Conclusion
This court concludes that the appeal is without merit. The amendment conforms to the City's Comprehensive Plan and is reasonably related to the police powers contained within C.G.S. Section 8.2.
The appeal is dismissed.
Jonathan E. Silbert, Judge