[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Ruling on Motion for Summary Judgment
The plaintiff has sued his former corporate employer and its directors as a result of his termination from employment. The court rules as follows on the defendants' motion for summary judgment.
 I
Count one of the operative second amended complaint alleges a breach of the covenant of good faith and fair dealing in the shareholders' agreement, the corporate bylaws, and an implied employment agreement. With regard to the alleged breach of the covenant of good faith concerning the shareholders' agreement, the defendants concede that the only question in this part of the summary judgment motion is whether the defendants' good faith in terminating the plaintiffs employment is a fact issue. The court finds that this issue is for the trier of fact. The issue of good faith and bad faith is not readily susceptible to summary judgment. See Batick v. Seymour, 186 Conn. 632, 646-47, 443 A.2d 471
(1982). In this case, the plaintiff disputes the defendants' claim that they acted in good faith with factually supported allegations that the plaintiff's termination was unusually abrupt, that the defendants benefitted financially from the termination, that the defendants fired the plaintiff because of his age, and that defendant Howard Meditz acted to further his romantic interest in a female employee. The court therefore denies summary judgment as to the first part of count one.
The plaintiff does not identify any corporate by-laws that his firing prevented him from enjoying. Accordingly, the court grants summary judgment to the defendants on the claim in count one that the defendants breached the covenant of good faith and fair dealing concerning the corporate by-laws.
The fate of the third part of the first count, concerning the alleged implied contract of employment terminable for cause only, initially turns on whether there was a written employment contract. The court finds that CT Page 12042 the terms of the 1993 Agreement By and Among Shareholders (the "Shareholders' Agreement"), of which the plaintiff was a signatory (or "Venturer"), apply to the termination of the plaintiffs employment with defendant Marquardt Roche/Meditz Hackett, Inc. (or "MR/MH.") The purpose of the Shareholders' Agreement was to acquire Marquardt Roche, Inc., and "to do any and all such further actions and to conduct such additional business as may be reasonably necessary to effectuate and further the same. . . ." (¶ 3.) The signatories agreed "to enter into a stockholders agreement governing all of the then shareholders of [Marquardt Roche, Inc.] simultaneously with the termination [of the MR Acquisition Corporation (or "the Acquisition Corporation")], the terms of which shall be substantially similar to those contained therein." (¶ 8.) Any ambiguity as to the application of the Shareholders' Agreement to MR/MH was clarified by the July, 1998 First and Second Amendment Agreements, which provided, in terms that differ only immaterially, that the Shareholders' Agreement, "which [the plaintiff and others] signed as shareholders of MR Acquisition Corporation prior to the merger shall apply and be binding upon them as the shareholders of Marquardt Roche/Meditz Hackett, Inc. [sic] the surviving corporation on and after August 1, 1998 as if they originally signed the same as shareholders of Marquardt Roche/Meditz Hackett, Inc." (July 20, 1998 Amendment Agreement, ¶ 2.) (See also July 28, 1998 Agreement, ¶ 1.)
The fact that the Shareholders' Agreement governed the plaintiffs employment at MR/MH leads to the conclusion that the plaintiff was an employee at will, notwithstanding alleged oral statements made by the defendants expressing the hope for a long employment relationship. The Shareholders' Agreement provides that "[e]ach venturer's employment with the Corporation shall be at the will of the Board of the Corporation." The same paragraph states that "[n]othing contained therein shall be construed as providing any covenant on the part of the Acquisition Corp. or the Corporation to employ any Venturer for any definite term." (¶ 20.) The Shareholders' Agreement also contains clauses providing that any amendments to the agreement must be in writing and that the written agreement constitutes the entire agreement among the parties. (¶ 28f, h.) This case is thus a stronger candidate for summary judgment than those involving employment manuals created by management. See generallyGaudio v. Griffin Health Services Corp., 249 Conn. 523, 536, 733 A.2d 197
(1999). Here, the plaintiff was a signatory to a written contract. Having entered into this contract in hopes of benefitting, the plaintiff must now live up to it though it has become burdensome. The plaintiff made a promise and, under civil law, cannot escape it on the grounds of convenience. The plaintiff does not cite any appellate precedent for the proposition that oral representations expressing the hope for a long CT Page 12043 employment relationship can undo a written contract expressly providing for employment at will and for amendments in writing only. Cf. Flemingv. Sedgwick James of Connecticut, Inc., Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 541429 (Aug. 11, 1995,Corradino, J.) ("puffing language" and other promises of permanent employment do not alter an employment at will contract); Giorgio v.Nukem, Inc., Superior Court, judicial district of Danbury, Docket No. 300479 (July 9, 1992, Fuller, J.) (7 C.S.C.R. 916) (under New York and Connecticut law, oral representations that the employee would not be terminated frivolously cannot vary an integrated contract of employment at will). The court therefore concludes that the plaintiff was an employee at-will.
The defendants agree that even an at-will employee may sue his employer for wrongful discharge in violation of the implied covenants of good faith and fair dealing if the reason for the discharge violates an important public policy. While the plaintiff contends that his termination from employment was in bad faith, he does not claim that it violated public policy. This case, then, does not involve the tort of wrongful discharge. Accordingly, the defendants are entitled to summary judgment on the third part of the first count alleging a breach of the covenant of good faith and fair dealing concerning an implied employment contract.
 II
The second count alleges that the defendant majority stockholders breached a fiduciary duty owed to the plaintiff as a minority stockholder by terminating his employment. Although the Connecticut Supreme Court has recognized a general cause of action for breach of fiduciary duty of majority stockholders towards a minority stockholder, see Yanow v. TealIndustries, Inc., 178 Conn. 262, 28 3-84, 422 A.2d 311 (1979), our appellate courts have not extended this cause of action to cases in which the majority's action was to terminate the employment of a minority shareholder. This court is not inclined to do so. The cause of action for breach of fiduciary duty by majority shareholders seems fully appropriate and necessary in cases in which the actions of the majority will injure the value of the corporation so that minority shareholders will suffer. Id., 282 n. 9. But when, as here, the gravamen of the claim is not that the majority has injured the value of the corporation but rather has terminated a shareholder's employment, the law of employment relations seems to provide sufficient protection for any civil wrongs. See Inglev. Glamore Motor Sales, 73 N.Y.2d 183, 538 N.Y.S.2d 771 (1989). Therefore, the court grants the motion for summary judgment on count two. CT Page 12044
 III
In count three, the plaintiff seeks a judicial dissolution of MR/MH and other remedies pursuant to General Statutes § 33-896 because the defendants' conduct was "illegal, oppressive or fraudulent."[1] In the absence of any controlling case law, the court must abide by the plain language of the statute, which does not exclude oppressive or fraudulent conduct in corporate employment matters. In view of the case law counseling against summary judgment on questions of motive and intent,Batick v. Seymour, supra, 186 Conn. 646-47, and the plaintiffs presentation of facts suggesting that the defendants terminated his employment in bad faith with ulterior motives, the court cannot conclude as a matter of law that the defendants' actions were not oppressive or fraudulent. The court accordingly denies the motion for summary judgment on count three. The plaintiff of course, is limited to the remedies and subject to any special defenses proscribed by the statutory scheme.
 IV
Count four alleges that the defendants' alleged representations to the plaintiff regarding his continued employment with and receipt of benefits from MR/MH make the defendants liable in promissory estoppel. The court grants summary judgment to the defendants on count four because promissory estoppel is not a proper cause of action when, as ruled above, there is valid contract governing the same subject. See Eagle HillSouthport School v. Roberts, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 362604 (Aug. 24, 2000, Melville,J.).
 V
Count five alleges that, in planning for his financial security, the plaintiff justifiably relied to his detriment on negligent misrepresentations made by the defendants concerning the plaintiffs tenure and future financial benefits. The sole basis for the summary judgment motion on this count is that the plaintiffs alleged poor job performance and unacceptable behavior was the intervening cause of the plaintiffs discharge and financial injuries. Thus, this argument rests on the materially disputed factual issues concerning the reasons for plaintiffs termination from employment. Because of these factual disputes, the court denies the summary judgment motion on count five.
 VI CT Page 12045
In the sixth count of the complaint, the plaintiff alleges that defendant corporate officer Howard Meditz tortiously interfered with the plaintiffs reasonable business expectancy that he would continue as an officer and employee of MR/MH for a number of years after the buyout of Marquardt Roche, Inc. The general rule, however, is that an agent may not be charged with having interfered with a contract of the agent's principal. See Appleton v. Board of Education, 53 Conn. App. 252, 267,730 A.2d 88 (1999), rev'd in part on other grounds, 254 Conn. 205,212-14, 757 A.2d 1059 (2000). The rule serves to prevent a corporation from becoming liable in tort for breaching its own contract. Id. Under this rule, the plaintiff could not sue Meditz, an agent of the corporation, for interfering with a contract or business expectation, in this case concerning employment, between the plaintiff and the corporation.
The plaintiff relies on an exception that applies if the agent "did not act legitimately within the scope of duty but used the corporate power improperly for personal gain." (Internal quotation marks omitted.) Id. The plaintiff alleges that Meditz stood to gain job security and other financial benefits from plaintiffs ouster, that the plaintiffs firing would pave the way for Meditz's girlfriend (and later wife) to advance within the agency, and that it would exact revenge for plaintiffs opposition to Meditz's affair with the woman in question.
The court finds that these allegations, even if supported by affidavits and other evidence, are insufficient to overcome the general rule barring tortious interference claims between two employees of the same corporation. Every valid claim of tortious interference requires the defendant to act tortiously, which involves proof that the defendant was guilty of fraud, misrepresentation, intimidation, or acting maliciously. See Solomon v. Aberman, 196 Conn. 359, 365, 493 A.2d 193 (1985). Tf this level of tortious conduct suffices to establish the exception for cases in which the agent "did not act legitimately within the scope of duty but used the corporate power improperly for personal gain," as the plaintiff essentially argues, then the exception will swallow the general rule. Under the plaintiffs theory, the rule barring tortious interference cases between employees will cease to function whenever the plaintiff meets the basic prerequisite of alleging tortious interference. This circular theory cannot embody the law. Thus, the exception to the rule barring tortious interference claims between two employees of the same corporation must involve actions going beyond fraudulent or malicious conduct.
Although the Appellate Court has referred to the exception as applicable when agents act "outside of their authority," our appellate CT Page 12046 courts have not defined the contours of the exception. Appleton v. Boardof Education, supra, 53 Conn. App. 267-68.[2] The language of the phrase "outside of their authority" appears to refer to something that an agent is not authorized to do. See Caserta v. Zoning Board of Appeals,23 Conn. App. 232, 237, 580 A.2d 528 (1990), rev'd on other grounds,219 Conn. 352, 593 A.2d 118 (1991). See also Martin v. Brady,261 Conn. 372, 377-79, ___ A.2d ___ (2002) ("scope of employment"). Thus, only if the agent is not acting within his corporate powers, and in effect becomes an outsider, would it be fair to conclude that he is capable of interference with the corporation's contracts. Here, even assuming that Meditz acted in bad faith for improper motives, he and the other directors had authority, under the Shareholders' Agreement, to fire the plaintiff without cause. Meditz and the other directors were doing something they were authorized to do. Therefore, the general rule prohibiting suits for tortious interference between employees governs count seven of the complaint. The court grants the summary judgment motion on this count.
 VII
Count seven alleges that, in previous years, the defendants had paid the plaintiff an annual bonus but that, in violation of General Statutes § 31-71c (c), the defendants failed to pay the plaintiff the portion of the 1999 bonus that he had earned through the time of his termination.[3] Section 31-71c (c) provides in pertinent part that "when an employee for any reason is laid off, the employer shall pay in full to such employee the wages earned by him not later than the next regular pay day. . . ." General Statutes § 31-71a (3) defines "[w]ages" to mean "compensation for labor and services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. . . ." There are no appellate decisions on the question of whether or when a bonus can constitute part of "wages" under the statute and the Superior Court cases that have addressed this issue essentially return to the statutory definition of "wages" as "compensation for labor and services rendered by an employee." See, e.g., Ziotas v. The Reardon Law Firm, P.C., Superior Court, judicial district of New London, Docket No. 550776 (Oct. 23, 2000, Corradino, J.) (28 Conn.L.Rptr. 431).
In this case, the defendants have presented evidence that the bonuses served as a means of distributing profits earned at the end of the budgetary year and that the amount of the bonus depended on how well the company performed the previous year and the level of ownership of each individual shareholder. They allege that the bonuses were not based solely or in any major part on the performance of the individual officer CT Page 12047 or shareholder. The plaintiff does not create a genuine dispute about these facts, but just adds that the corporation had a long-standing practice of paying equal annual bonuses to Meditz and the plaintiff. Under these facts, the bonuses were more akin to dividends than wages. While any financial benefit that the employees received depended, in an indirect way, on the work performed by these employees, each person's bonus did not bear a direct relationship to the amount and quality of his labor and services. Without such a direct relationship, the court cannot find that a bonus represents "compensation for labor and services rendered by an employee." General Statutes § 31-71a (3). Accordingly, the court grants summary judgment for the defendants on count seven.
 VIII
In count eight, the plaintiff alleges that the defendants fraudulently induced the plaintiff into adopting the 1993 Shareholders' Agreement as the governing agreement for MR/MH in July, 1998 by assuring the plaintiff of continued employment with and receipt of benefits from the corporation. The defendants argue that fraudulent inducement requires the plaintiffs reliance to be reasonable and that, because the Shareholders' Agreement provided for employment at will, the plaintiffs reliance on the defendants' inducements was not reasonable. Even if fraudulent inducement does require the plaintiffs reliance to be reasonable, the court would deny summary judgment on this count. The issue of the reasonableness of reliance is one for the trier of fact, especially given that the plaintiff has supplied evidence of statements by Meditz that might have induced the plaintiff to believe that he would have a long career with the corporation.[4] The defendants also contend that the plaintiffs decision to sign the July, 1998 amendments did not cause him any damages and that the plaintiffs unclean hands bar him from obtaining any equitable relief. These issues, too, are for the trier of fact. SeeAbrahams v. Young Rubican, Inc., 240 Conn. 300, 307, 692 A.2d 709
(1997).
 IX
The court denies the summary judgment motion concerning count nine, alleging fraudulent misrepresentation, for the reasons stated in section V above.
 X
The plaintiffs tenth and final count charges the defendant corporation with age discrimination, in violation of General Statutes § CT Page 1204846a-60.[5] The defendant's principal contention is that the plaintiff has not generated a fact issue concerning whether the plaintiffs discharge from employment was motivated by discriminatory intent so as to overcome the defendant's asserted nondiscriminatory reasons for the discharge. The defendants characterize various statements they allegedly made suggesting that the plaintiffs ideas were dated as legitimate criticisms of job performance. The plaintiff views these statements as evidence of age discrimination. The disputed issue of the reasons for and motives behind the defendant's actions in making these statements and terminating the plaintiffs employment is for the trier of fact to resolve. See Batick v. Seymour, supra, 186 Conn. 646-47. The court therefore denies summary judgment on the tenth count.
 XI
For the reasons stated, the court grants the defendants' motion for summary judgment on count one with respect to the corporate by-laws and implied employment agreement, and on counts two, four, six, and seven, and denies the remainder of the motion.
It is so ordered.
 Carl J. Schuman Judge, Superior Court